United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANDREW LEE,

Plaintiff,

v.

THE PEP BOYS MANNY MOE AND JACK OF CALIFORNIA, et al.,

Defendants.

Case No.: C-12-05064 JSC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

This Fair Debt Collection Practices Act ("FDCPA") and California Unfair Competition Law ("UCL") lawsuit arises out of an employee's alleged misuse of his employee discount and for changing the oil on his car while at work. Plaintiff Andrew Lee initiated this action in Alameda County Superior Court against Defendants The Pep Boys Manny Moe and Jack of California ("Pep Boys"), Palmer, Reifler & Associates ("Palmer"), and Patricia Hastings ("Hastings") and Defendants subsequently removed the action to federal court. Now pending before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("Motion"). (Dkt. No. 12.) For the reasons stated below, the Motion is GRANTED in part with leave to amend and DENIED in part.

**ALLEGATIONS OF THE FIRST AMENDED COMPLAINT**

The following facts are taken from Plaintiff's First Amended Complaint and the documents submitted by Defendants, of which the Court takes judicial notice.[1] At some point during his employment with Pep Boys, Plaintiff "was accused of performing an oil change that he did not pay for on his own car while he was at work and using his employee discount to complete customer transactions on behalf of family members and friends." (First Amended Complaint ("FAC") ¶ 24.) "Although Plaintiff did not know at the time of these alleged acts that they purportedly violated Pep Boys' policy, Plaintiff nevertheless agreed to pay Pep Boys for the discounted transactions and his labor for the oil change. Pep Boys deducted $20.00 from Plaintiff's last paycheck as "complete resolution." (*Id.*) Pep Boys then terminated Plaintiff's employment. (*Id.*)

Following his termination, Plaintiff received two letters on Palmer, Reifler & Associates letterhead and signed by Patricia Hastings "Of Counsel to the Firm." (*See* Dkt. No. 13 at 4, 6; FAC ¶ 24.) The letters state that the "Law Firm" represents Pep Boys "concerning its civil claim against you in connection with an incident in their store 607 on 4/17/2012." (Dkt. No. 13 at 4, 6.) The letters further represent that Pep Boys, "[p]ursuant to Cal. Penal Code § 490, Theft of retail merchandise; civil liability," may consider moving forward with a statutory civil damages claim against Plaintiff if he did not settle the matter by mailing payment to the firm's P.O. box or by paying online through www.palmerpay.com. (*Id.*; *see* FAC ¶ 24.) The first letter, dated May 23, 2012, demands $350 within 20 days and the second letter, dated June 12, 2012, demands $625 within 10 days. (Dkt. No. 13.)

Plaintiff brings this action individually and as a representative of a class. He alleges that Hastings and Palmer violated the FDCPA in a number of ways: They sent communications that did not state they were from a debt collector; the communications stated payment was due in under 30 days; they threatened lawsuits they did not intend to pursue under a code which would not apply;

---

[1] Although courts generally cannot consider documentary evidence on a motion to dismiss, doing so is appropriate when the pleadings refer to the documents, their authenticity is not in question, and there are no disputes over their relevance. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (holding that courts may properly consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleadings").

United States District Court
Northern District of California

and they sought charges in excess of those allowed by law. (FAC ¶ 32.) Plaintiff alleges that by performing the above acts, Pep Boys, Hastings, and Palmer also engaged in unfair and unlawful business practices, violating Cal. Bus. & Prof. Code §§ 17200 et seq. (*Id.* at ¶ 37.) Plaintiff seeks restitution for "any resources and monies expended to defend against Defendants' unlawful business practices," statutory damages, and attorney's fees. (FAC ¶ 39.)

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) may be based on either (1) the "lack of a cognizable legal theory," or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). While "detailed factual allegations" are not required, a complaint must include sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

For purposes of ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations of material fact as true and construes the pleadings in the light most favorable to the plaintiffs. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court need not, however, accept as true pleadings that are no more than legal conclusions or the "formulaic recitation of the elements' of a cause of action." *Iqbal*, 556 U.S at 663. Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

**DISCUSSION**

**A. FDCPA**

Defendants move to dismiss Plaintiff's FDCPA claim on two grounds: 1) The letters do not seek to recover a "debt," as that term is defined by the FDCPA, and therefore no action may lie; and 2) Pep Boys is not a "debt collector" and thus is not amenable to suit under the statute. (Dkt. No. 12 at 1-2.)

**1. "Debt"**

In enacting the FDCPA, Congress sought to counter the "abusive, deceptive, and unfair debt collection practices" used by many debt collectors. 15 U.S.C. § 1692. However, "[n]ot all obligations to pay are considered debts under the FDCPA, so a threshold issue in a suit brought under the Act is whether or not the dispute involves a debt within the meaning of the statute." *Turner v. Cook*, 362 F.3d 1219, 1226-27 (9th Cir. 2004). The FDCPA defines debt as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). The act does not define "transaction," but there is judicial consensus that the statute is "limited in its reach to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services." *Turner*, 362 F.3d at 1227; *see also Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) ("at a minimum, a 'transaction' under the FDCPA must involve some kind of business dealing or other consensual obligation") (internal quotation marks and citation omitted).

Damages for tortious or criminal acts are not debts because they arise from unilateral acts of negligence or criminality, not from consensual consumer transactions. *Turner*, 362 F.3d at 1227-28 (negligence); *Fleming*, 581 F.3d at 926 (criminality). "Although a thief undoubtedly has an obligation to pay for the goods and services he steals," *Bass*, 111 F.3d at 1326, the obligation arises from a non-consensual transaction—the theft—and thus is outside the scope of the FDCPA.

Defendants argue that the allegedly offending letters did not seek to collect a "debt" within the meaning of the FDCPA as a matter of law. They contend that Plaintiff's use of "his employee discount to complete customer transactions on behalf of family members and friends" and his "performing an oil change while he was at work" (FAC ¶ 24) were unilateral, non-consensual transactions and therefore the FDCPA does not apply; indeed, they emphasize that by alleging that at the time of the conduct at issue Plaintiff was unaware that his conduct violated Pep Boys' policy, Plaintiff has admitted the acts in fact violated Pep Boys' policies and were therefore non-consensual. When the allegations are viewed in the light most favorable to Plaintiff, however, the alleged

incidences of policy violations constitute consensual transactions and therefore satisfy the FDCPA's "debt" requirement.

**a. Misuse of employee discount**

Plaintiff's allegation that he used "his employee discount to complete customer transactions on behalf of family and friends" and that such conduct purportedly violated Pep Boys' policy plausibly alleges a consensual consumer transaction, and thus a debt, within the meaning of the FDCPA. The allegation supports a common sense inference that the sale of the goods or services themselves was consensual, but that Plaintiff's application of his employee discount to purchases made on behalf of family and friends violated company policy. In other words, the transaction that gave rise to the obligation—Plaintiff's purchase of the goods and/or services from Pep Boys—was consensual; the dispute is whether he should have paid more than he did since the merchandise, unbeknownst to Pep Boys, was purchased for Plaintiff's friends and family. Because the alleged obligation to pay arose out of a consensual consumer transaction—the sale of goods and/or services from Pep Boys to Plaintiff—the alleged obligation is considered a debt under the FDCPA. *See* 15 U.S.C. § 1692a(5).

While there do not appear to be any cases directly on point, the caselaw addressing dishonored (bounced) checks is instructive. The Ninth Circuit has held that an obligation arising out of the writing of a bad check is considered the result of a consensual transaction, notwithstanding that the merchant in such situations consents to the transaction without knowing the check is, or will become, dishonored. *Charles v. Lundgren & Assocs., P.C.*, 119 F.3d 739, 742 (9th Cir. 1997) ("[A] check evidences the drawer's obligation to pay for the purchases made with the check, and should the check be dishonored, the payment obligation remains."); *see also Irwin v. Mascott*, 112 F. Supp. 2d 937, 948 (N.D. Cal. 2000) (rejecting debt collector's argument that Cal. Penal Code § 490.5 applies to bad check writers because the buyers had "lawfully taken merchandise" with the merchant's consent, constituting a consumer transaction under the FDCPA); *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997) (holding that dishonored checks constitute a "debt" because the FDCPA "reach[es] those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or



United States District Court
Northern District of California

services”). Similarly, here, viewing the allegations in the light most favorable to Plaintiff, Pep Boys consented to the sale of goods and services to Plaintiff, it just did not consent to what Plaintiff paid, just as the retailers in *Charles* and *Bass* consented to the sale but not to what the consumer paid (nothing, since the check bounced). Although Pep Boys may not have consented to the transactions had they known the goods were for the use of Plaintiff’s family and friends, or would have insisted that Plaintiff pay the undiscounted price, the exchange of money for merchandise constitutes a consensual transaction.

The cases cited by Defendants are inapposite. In *Fleming*, the court determined that an action for tortious conversion did not create a debt. 581 F.3d at 926. There, Barnes, an employee of Ace Hardware, stole goods from his employer and resold them at discounted prices to others. *Id.* at 924. M3, Ace’s assignee, brought a lawsuit for conversion against the purchasers. *Id.* at 925. The purchasers then brought suit under the FDCPA, alleging that their purchases constituted consensual transactions with Ace. *Id.* at 926. The court disagreed, holding that “Barnes’s actions far exceeded the scope of Ace’s consent, placing the resulting [purchasers’] obligations well outside the scope of the debt obligation contemplated by the FDCPA.” *Id.* A central, undisputed fact in *Fleming* was that Barnes had stolen the products the plaintiffs eventually purchased. Here, in contrast, Pep Boys *sold* Plaintiff the goods and/or services and consented to his taking possession of them.

Defendants also cite *Shorts v. Palmer*, 155 F.R.D. 172, 174 (S.D. Ohio 1994) and *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1165 (3d Cir. 1987). These cases, however, do not apply because the plaintiffs in those cases did not even allege that the debt arose out of a consensual consumer transaction. *See Shorts*, 155 F.R.D. at 174 (dismissing plaintiff's FDCPA claim where plaintiff was accused of shoplifting and did not allege that the debt arose out of a consumer transaction); *Zimmerman*, 834 F.2d at 1165 (dismissing plaintiff's FDCPA claim where plaintiff did not allege that the debt arose out of a consumer transaction and argued that the FDCPA should cover allegations of theft). Further, the holding in *Zimmerman* was based on the premise that a transaction giving rise to a debt within the meaning of the act must involve the “offer or extension of credit to a consumer.” *Zimmerman*, 834 F.2d at 1168. This rationale, however, has been expressly rejected by the Ninth Circuit. *See Charles*, 119 F.3d at 742.

At oral argument Defendants suggested that the transactions would not have been consensual if Plaintiff did not have the right to make the purchases himself; for example, if Pep Boys' policy was that employees could not "ring up" their own purchases, and instead required others to transact purchases for employees. The short answer is that such policy, if it existed, is not alleged in the FAC. The FAC plausibly supports an inference that Plaintiff's offense was applying the employee discount to the purchases, not making the purchases in the first instance.

Defendants' insistence that Plaintiff's purchases were fraudulent, that is, that he knowingly and repeatedly misused his employee discount for the benefit of his family and friends, does not mean that Plaintiff cannot state a FDCPA claim as a matter of law. Plaintiff alleges that he was unaware that his use of his employee discount in that manner violated Pep Boys' policy. (FAC ¶ 24.) In *Bass*, for example, the Seventh Circuit, in affirming summary judgment against the defendants, rejected a similar argument where the defendants "failed to conclusively establish that [plaintiff] intended to pass a worthless check." *Bass*, 111 F.3d at 1329 (7th Cir. 1997). Similarly, here, the FAC's allegations do not conclusively establish that Plaintiff intended to misuse his employee discount. Moreover, the *Bass* court noted that even if such fraudulent intent was present, the court would be uncomfortable "with the proposition that the courts should create a fraud exception where none exists in the Act's text." *Id.* at 1329-30.

The Court is also not persuaded that the allegedly offending letters' characterization of Plaintiff's conduct as "theft' in violation of Penal Code section 490.5(c) means the transactions were non-consensual. The Court's focus is on the nature of the transaction itself, not Defendants' self-serving characterization of the transaction. *See Fleming*, 581 F.3d at 925 (holding that the determination of whether a debt exists within the meaning of the FDCPA requires courts "to examine the alleged 'transaction' and determine whether it is covered by the FDCPA"); *Betts v. Equifax Credit Info. Servs., Inc.*, 245 F. Supp. 2d 1130, 1133 (W.D. Wash. 2003) (stating that in determining whether a "debt" falls under the FDCPA "[t]he pertinent factual occurrence to consider is the one that gave rise to the deficiency claim").

**b. The oil change**

Turning to the alleged uncompensated oil change Plaintiff provided himself, the collection letters warn Plaintiff that failure to make the requested payments may lead to civil liability "[p]ursuant to Cal. Penal Code § 490.5 'Theft of retail *merchandise*; civil liability.'" (Dkt. No. 13 (emphasis added).) Section 490.5 defines "merchandise" as "any personal property, capable of manual delivery, displayed, held or offered for retail sale by a merchant." Cal. Penal Code § 4905.5(g)(1). Plaintiff asserts that he paid for the oil and the oil filter, but did not pay for his labor. (FAC ¶ 24; Opposition at 10.) Because the letters appear to seek only payment arising out of theft of merchandise, Plaintiff's supposed theft of *labor* appears to be outside of the letters' scope. Although the FAC does not address this disparity, the parties seem to agree that the alleged theft of labor is one of the bases for the letters. Given this agreement, the Court will address whether Plaintiff's alleged theft of labor constitutes a "transaction," notwithstanding its dubious connection to the collection attempts.

Viewing the allegations in the light most favorable to Plaintiff, the oil change Plaintiff received from Pep Boys, but did not pay for, may also be considered a consensual consumer transaction. The FAC supports an inference that it was Pep Boys' policy that if an employee changed his oil at work, the employee must pay for his labor. This inference flows from the allegation that after Plaintiff became aware of Pep Boys' policy, he agreed to pay Pep Boys for his labor for the oil change and that Pep Boys deducted $20 as a complete resolution of the matter. Under this scenario, the underlying transaction giving rise to the obligation to pay—the oil change—was consensual, similar to the bounced check scenario. The obligation to pay arose out of the agreement that if an employee changes the oil in his car he must pay for his labor.

The allegations of the FAC are vague enough, however, that they could also support an inference that Pep Boys' policy was that employees are not allowed to change the oil in their own cars at work, regardless of whether they subsequently pay for materials and labor. This inference arises from the FAC's allegations that Plaintiff's conduct violated a "policy," without any further description of that policy, and from the allegation that Plaintiff was terminated. Under such circumstances the obligation to pay might not have arisen from a consensual transaction since Pep

Boys would not have agreed to allow its employee to change his car's oil, even if the employee paid for his own labor. On Defendants' Motion to Dismiss, however, the Court must draw all inferences in Plaintiff's favor.

Because the Court cannot hold as a matter of law that Plaintiff's alleged obligations did not arise out of consensual transactions, Plaintiff has stated a claim under the FDCPA. Defendants' Motion to Dismiss Plaintiff's FDCPA claim is accordingly DENIED.

**2. "Debt Collector"**

Defendants also argue that Pep Boys is exempt from the FDCPA because it is not a "debt collector" under the statute. Pursuant to the FDCPA, a "debt collector" is defined as "any person . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a. Pep Boys asserts that it is a creditor, not a debt collector, and the two categories are mutually exclusive. The argument is irrelevant because, as Plaintiff represents in its response to the Motion, and as the FAC itself reveals, the first cause of action is alleged against only Hastings and Palmer. Nonetheless, to the extent Plaintiff's FAC does allege that Pep Boys is a debt collector, Defendants' argument is correct: "The term debt collector does not include . . . any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C.A. § 1692a; *see also De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1074 (9th Cir. 2011) ("[T]he person who originated the debt … is not considered a debt collector."). Because Plaintiff alleges that Pep Boys is the creditor, he cannot state a FDCPA claim against Pep Boys.

**B. Cal. Bus. & Prof. Code § 17200**

**1. Standing**

To have standing to bring a claim under California's Unfair Competition Law ("UCL"), a plaintiff must show that he or she "suffered injury in fact" and "lost money or property as a result" of an unfair business practice. Cal. Bus. & Prof. Code § 17204; *In re Tobacco II Cases*, 46 Cal. 4th 298, 325 (2009). Injury in fact exists where, as a result of the unfair business practice, a plaintiff is "required to enter into a transaction, costing money or property that would otherwise have been unnecessary." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011).

A plaintiff "proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." *In re Tobacco*, 46 Cal. 4th at 306. Consequently, "a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct." *Id.* at 326. However, a "plaintiff is not required to allege that [the challenged] misrepresentations were the sole or even the decisive cause of the injury-producing conduct." *Id.* "'Reliance' as used in the ordinary fraud context has always been understood to mean reliance on a statement for its truth and accuracy. It follows that a UCL fraud plaintiff must allege he or she was motivated to act or refrain from action based on the truth or falsity of a defendant's statement, not merely on the fact it was made." *Kwikset Corp.*, 51 Cal. 4th at 327 n.10.

Plaintiff alleges that he lost $20 when Pep Boys deducted the money from his last paycheck. (FAC ¶ 24.) This allegation of lost money is sufficient to support standing for Plaintiff's UCL claim against Pep Boys; however, it cannot serve as the basis for his claim against Hastings and Palmer because the loss occurred before they became involved in the dispute. In addition, the $20 payment also does not establish standing for a claim concerning Pep Boy's conduct subsequent to the payment since such conduct did not cause Plaintiff to make the payment.

As for Plaintiff's UCL claims against Hastings and Palmer, Plaintiff argues that he incurred out-of-pocket costs, including hiring an attorney, to respond to the letters authorized by Pep Boys and sent by Hastings and Palmer. (Opposition at 14 (citing FAC ¶ 39).) The FAC, however, does not include this allegation. Rather, Plaintiff seeks restitution for "any resources and monies expended to defend against Defendants' unlawful business practices, including without limitation, any attorney's fees and costs expended in responding to Defendants' unlawful communications." (FAC ¶ 39). Seeking restitution for "any resources and monies expended" is not the same as specifically alleging that resources and monies were *actually* expended.

Defendants argue that, even if Plaintiff adequately alleges costs for attorney's fees incurred as a result of the letters, attorney's fees cannot serve as the basis for UCL standing. Defendants are correct that attorney's fees expended to bring a UCL claim do not constitute injury in fact. *See*

*Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 989 (N.D. Cal. 2010). However, money spent responding to a collection action can constitute injury in fact for the purposes of the UCL, even where the plaintiff has not paid any money to the defendants. *See Koller v. W. Bay Acquisitions, LLC*, 2012 WL 2862440 at *8 (N.D. Cal. July 11, 2012) (holding there was standing where plaintiff alleged he incurred costs of defense, including attorneys' fees and costs in conjunction with hiring counsel to respond to Defendants' demand letters); *Tourgeman v. Collins Fin. Servs., Inc.*, WL 6527758 at *8 (S.D. Cal. Nov. 23, 2009); *Janti v. Encore Capital Grp., Inc.*, WL 3058260 at *7 (S.D. Cal. Aug. 3, 2010) (finding standing where plaintiffs alleged they were forced to incur legal expenses in defense of collection actions filed in state court). Accordingly, Plaintiff's UCL claim against Hastings and Palmer is dismissed for lack of standing with leave to amend.

**2. Unlawful, Unfair, or Fraudulent Business Practices**

The UCL broadly prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §§ 17200 et seq. By proscribing any "unlawful" business practice, the UCL "borrows violations" of other state and federal laws and makes them independently actionable. *Cel-Tech Commc'n, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). A practice may "be deemed unfair or deceptive" under the UCL "even if it is not unlawful." *Id.* An unfair business practice is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (internal quotation marks omitted). Whether a business practice is unfair "involves an examination of that practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 826 (9th Cir. 2008). "An employer's business practices concerning its employees" are within the scope of the prohibition against unfair competition. *Wilkinson v. Times Mirror Corp.*, 215 Cal. App. 3d 1034, 1052 (1989). "What constitutes 'unfair competition' or 'unfair or fraudulent business practice' under any given set of circumstances is a question of fact . . . ." *People v. McKale*, 25 Cal. 3d 626, 635 (1979).

"'Fraudulent,' as used in the statute, does not refer to the common law tort of fraud but only requires a showing that members of the public 'are likely to be deceived.'" *Olsen v. Breeze*, 48 Cal.

App. 4th 608, 618 (1996). Although fraud is not a necessary element of a claim under the UCL, where a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of that claim[,] . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)" of the Federal Rules of Civil Procedure. *Kearns v. Ford Motor, Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). To satisfy Rule 9(b), the plaintiff must include "the who, what, when, where, and how" of the fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994). A claim for fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

Regarding the unlawful prong, Plaintiff has adequately alleged a violation of the FDCPA against only Hastings and Palmer; however, as noted above, Plaintiff has not adequately alleged standing under the UCL to pursue his UCL claim against those defendants.

Under the unfair prong, Plaintiff does have standing to bring his UCL claim against Pep Boys arising from his $20 loss, but the FAC does not adequately allege any "unfair" practices by Pep Boys that caused Plaintiff to pay Pep Boys the $20. Plaintiff alleges that he *agreed* to the $20 deduction from his last paycheck in exchange for resolution of the dispute over the above-discussed transactions. (*See* FAC ¶ 24.) Plaintiff has not alleged facts that show this agreement was somehow unfair or that he was otherwise coerced into the agreement. To the extent Plaintiff contends that Pep Boys' conduct subsequent to the payment violated the UCL, as noted above, Plaintiff has not established standing to bring such a claim.

Finally, regarding the fraudulent prong, to the extent Plaintiff alleges that Pep Boys' actions in accepting the $20 payment from Plaintiff as complete resolution constitutes fraudulent conduct, the claim is dismissed. Plaintiff has not met the heightened pleading standards of Rule 9(b), which requires that the plaintiff include "the who, what, when, where, and how" of the fraud. *Vess*, 317

F.3d at 1106. The FAC fails to include basic facts concerning the statement, such as what was said, who said it, and when.

Accordingly, Defendants' Motion to Dismiss Plaintiff's UCL claim is GRANTED with leave to amend.

**3. Litigation Privilege**

Finally, Defendants argue that the litigation privilege, California Civil Code section 47(b), prevents Plaintiff from basing his UCL claim on the letters sent by Hastings and Palmer. The "usual formulation" of the privilege is that it "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 211–212 (1990. "The principal purpose of the privilege is "to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007). While the privilege extends to some communications made outside official judicial proceedings, it applies to "prelitigation communication[s]" only if the communications "relate[] to litigation that is contemplated in good faith and under serious consideration." *Action Apartment*, 41 Cal. 4th at 1241. "No public policy supports extending a privilege to persons who attempt to profit from hollow threats of litigation." *Id.* at 1251. "[T]he privilege attaches at that point in time that imminent access to the courts is seriously proposed by a party," and "[t]he mere potential or bare possibility that judicial proceedings might be instituted in the future is insufficient to invoke the litigation privilege." *Edwards v. Centex Real Estate Corp*., 53 Cal. App. 4th 15, 36 (1997). "Whether a prelitigation communication relates to litigation that is contemplated in good faith and under serious consideration is an issue of fact." *Action Apartment*, 41 Cal. 4th at 1241.

The FAC alleges that although the collection letters threatened a civil lawsuit, "Defendants had no intention of bringing such lawsuits, especially given that such lawsuits must be brought in small claims court." (FAC ¶ 21.) This allegation, which the Court must accept as true, supports an inference that litigation was not contemplated in good faith and under serious consideration at the

time the letters were sent. Thus, dismissal of Plaintiff's UCL claim at this stage in the action based on the litigation privilege would be inappropriate.

**CONCLUSION**

For the reasons stated, the Motion to Dismiss the First Cause of Action for violation of the FDCPA is DENIED and the Motion to Dismiss the Second Cause of Action for violation of the UCL is GRANTED with leave to amend. A second amended complaint, if any, shall be filed within twenty (20) days of the date of this Order.

This Order disposes of Docket No. 12.

IT IS SO ORDERED.

Dated: December 7, 2012

JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

United States District Court
Northern District of California