UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW LEE,<br><br>    Plaintiff,<br><br>    v.<br><br>THE PEP BOYS-MANNY MOE & JACK OF CALIFORNIA, et al.,<br><br>    Defendants. | Case No. 12-cv-05064-JSC<br><br>**ORDER RE: MOTION FOR SANCTIONS**<br><br>Re: Dkt. No. 133 |

Plaintiff Andrew Lee ("Plaintiff") is a former employee of Defendant The Pep Boys—Manny Moe & Jack of California. ("Pep Boys"). This putative class action arises out of the defendants' attempted collection of a debt Plaintiff purportedly incurred as a result of his alleged misuse of his employee discount and for changing his car's oil while he was at work at Pep Boys. In an Order granting Defendants' motion to strike Plaintiff's proposed errata to his deposition testimony transcript, the Court granted Defendants leave to file a motion for sanctions against Plaintiff. (Dkt. No 132 at 4.) Now pending before the Court is Defendants' motion for sanctions. Having considered the parties' submissions, and having had the benefit of oral argument on December 3, 2015, the Court GRANTS IN PART the motion for sanctions as set forth below.

**BACKGROUND**

The instant dispute arises out of Defendants' efforts to depose Plaintiff. The Court has reviewed the entirety of Plaintiff's deposition testimony, and incorporates the transcript by reference here in its entirety. (*See* Dkt. Nos. 136-9—136-11.) Without repeating the testimony here, the Court summarizes below the factual background underpinning Defendants' request for sanctions.

The first session of Plaintiff's deposition occurred in Burbank, California on May 13,

2014. The session lasted only 20 minutes. The transcript reflects that Plaintiff answered many questions, but when defense counsel began to ask Plaintiff about his employment history—*i.e.*, where he worked—his attorney, Dennis Hyun, objected on relevance and privacy grounds and instructed Plaintiff not to answer. (Dkt. No. 13-9 at 19.) When defense counsel, John Dahlberg, stated that the privacy objection was without merit; defense counsel attempted to meet and confer with Plaintiff's counsel on this issue, but Mr. Hyun told Mr. Dahlberg to move to compel. (*Id.* at 10:23.) On other occasions, Mr. Hyun appeared to coach the witness. (*See, e.g.*, *id.* at 15:18-19.) When Mr. Hyun persisted in instructing Plaintiff not to answer, defense counsel ended the deposition, stating his intent to seek a referee to manage the deposition. (*Id.* at 22.) Instead of immediately filing a motion seeking a referee, the parties instead engaged in settlement efforts. (*See* Dkt. No. 115-1 ¶¶ 10-11.) These efforts ultimately proved unfruitful, and Plaintiff's second deposition session occurred in Los Angeles on June 16, 2015.

At the June 2015 deposition session, Mr. Hyun made numerous speaking objections. (*See, e.g.*, Dkt. No. 136-10 at 53:18-19, 55:14-16, 57:20-22.) At one point, when asked whom he was suing, Plaintiff responded that he did not know. (*Id.* at 76-77.) According to Mr. Dahlberg, while Plaintiff was answering, Mr. Hyun noticeably pointed to the caption of a deposition exhibit so that Plaintiff could identify Defendants. (*Id.* (Mr. Dahlberg tells Mr. Hyun on the record to stop pointing); *id.* at 84: 11-16 (recounting the incident on the record); *see also* Dkt. No. 115-1 ¶¶ 14-15.) Mr. Dahlberg then began to ask Plaintiff about his knowledge of the case, which led to some "I don't know" answers and corresponding speaking objections from Mr. Hyun on various grounds. The deposition devolved quickly, with Mr. Hyun telling defense counsel not to interrupt him or Plaintiff, and Mr. Dahlberg repeating that Mr. Hyun's objections were improper. Eventually, Plaintiff's other counsel, Larry Lee—who had not been defending the deposition—rose from his chair and declared that he and Plaintiff were leaving because defense counsel had been cutting off Mr. Hyun's objections. (Dkt. No. 136-10 at 80-81.) Defense counsel offered to, and did, wait five minutes for Plaintiff to return, but neither he nor his attorney did. (*See id.* at 84-85.)

Following Plaintiff's walk-out, Defendants moved to compel Plaintiff's deposition with the

assistance of a special master and sought sanctions. (Dkt. No. 115.) The Court granted Defendants' request to compel Plaintiff to appear in San Francisco at the courthouse to complete his deposition. (Dkt. No. 118.) The court declined to appoint a special master to referee Plaintiff's counsel's objections, and instead noted that "all objections as to form are preserved; thus, the only objections that counsel shall make going forward are on grounds of privilege." (*Id.*) The Court reserved ruling on Defendants' request for sanctions. (*Id.*) The parties completed Plaintiff's deposition on September 3, 2015. Plaintiff's counsel's objections continued. Called to rule on one such objection, the Court noted that "[t]he reason [the parties] are here today is, frankly, from the transcript, the objections [Mr. Hyun] made in those earlier [deposition sessions] were completely inappropriate." (Dkt. No. 136-11 at 33.)

Plaintiff filed a motion for class certification on September 21, 2015. (Dkt. No. 120.) One week later, Plaintiff sent Defendants a notice of errata, identifying 17 changes to Plaintiff's June 2015 and September 2015 deposition testimony. (Dkt. No. 128-2.) Via email, Plaintiff's counsel Larry Lee refused to meet and confer about the errata, citing Plaintiff's disagreement on the law and a preference for a written record of the parties' dispute. (*See* Dkt. No. 133-1 at 14.) Defendants therefore notified the Court that they planned to challenge the errata. (Dkt. No. 122.) As a result, the Court delayed briefing on Plaintiff's class certification motion pending resolution of Defendants' challenge to the errata and set a briefing schedule on the deposition-related discovery dispute. (Dkt. No. 127.) On the day Defendants' motion was due (set by Court Order on the docket) Plaintiff withdrew all 11 proposed changes to the June 2015 deposition—*i.e.*, the bulk of Defendants' argument—leaving at issue only six proposed changes to the September 2015 testimony. (*See* Dkt. No. 130 ¶ 3; Dkt. No. 131-9 ¶¶ 4-5.) The Court granted Defendants' motion to strike the remaining six proposed errata, concluding that they contradicted Plaintiff's earlier sworn testimony and therefore are not permitted changes under Federal Rule of Civil Procedure 30(e). *Lee v. The Pep Boys-Manny Moe & Jack of Cal.*, No. 12-cv-05064-JSC, 2015 WL 6471186, at *2 (N.D. Cal. Oct. 27, 2015). The Court rejected Plaintiff's arguments that the proposed changes are mere clarifications to Plaintiff's earlier testimony, noting that "[i]t may well be that Plaintiff's answers at his deposition were incorrect[,]" but Plaintiff's counsel "had the

3

opportunity during Plaintiff's deposition to question Plaintiff or otherwise seek clarification about any of the questions that defense counsel asked." *Id.* Defendants also renewed their request for sanctions, and in the Order the Court instructed Defendants to file a noticed motion for sanctions supported by proper authority. (*Id.*) Defendants' motion for sanctions followed. (Dkt. No. 133.)

## LEGAL STANDARD

Defendants ask the Court to sanction Plaintiff pursuant to Federal Rule of Civil Procedure 30(d)(2), the Court's inherent authority, and 28 U.S.C. § 1927. Rule 30(d)(2) provides for sanctions against one who "impedes, delays or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). Rule 30(d)(2) sanctions do not require a finding of bad faith. *BNSF Ry. Co. v. San Joaquin Valley Rr. Co.*, No. 1:08-cv-01086-AWI-SMS, 2009 WL 3872043, at *3 (E.D. Cal. Nov. 17, 2009). The advisory committee notes to Rule 30(d)(2) note that the rule "explicitly authorizes the court to impose the cost resulting from obstructive tactics that unreasonably prolong a deposition on the person engaged in such obstruction." The note further provides that the "sanction may be imposed on a non-party witness as well as a party or attorney, but is otherwise congruent with Rule 26(g)." Rule 26(g), in turn, provides that when conduct violates the Rule, the Court "must impose an appropriate sanction[,]" which "may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3). The sanctions under Rule 30(d)(2) "may include attorney's fees incurred as a result of the improper conduct and the necessity of filing a motion with the Court." *BNSF Ry. Co.*, 2009 WL 3872043, at *3 (citations omitted). Sanctions under Rule 30(d)(2) are discretionary. *See Batts v. Cnty. of Santa Clara*, No. C 08-00286 JW, 2010 WL 545847, at *2 (N.D. Cal. Feb. 11, 2010). Courts have imposed sanctions on attorneys for frustration a deponent's examination and unnecessarily prolonging proceedings under Rule 30(d)(2). *See, e.g.*, *Morales*, 204 F.R.D. at 57.

Under its inherent powers, a court may impose sanctions where a party has willfully disobeyed a court order, or where the party has 'acted in bad faith, vexatiously, or for oppressive reasons." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1758 (2014) (citation omitted). These powers, however, "must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). Accordingly, the bad-faith requirement sets a

4

"high threshold," *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997), which may be met by willful misconduct, or recklessness that is coupled with an improper purpose. *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001). It is the moving party's burden to demonstrate that the party against whom it seeks sanctions acted with the requisite bad faith or improper purpose. *See Burnett v. Conseco, Inc.*, 87 F. Supp. 3d 1238, 1249 (N.D. Cal. 2015).

Finally, 28 U.S.C. § 1927 authorizes sanctions against "[a]ny attorney or other person admitted to conduct cases in any court of the United States[.]" Section 1927 sanctions can only be imposed upon individual attorneys. *Kaass Law Firm v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293-94 (9th Cir. 2015) (citations omitted). For Section 1927 sanctions, "[t]he key term in the statute is 'vexatiously'; carelessly, negligently, or unreasonably multiplying the proceedings is not enough." *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010). A "finding that the attorney recklessly or intentionally misled the court is sufficient to impose sanctions under § 1927, and a finding that the attorneys recklessly raised a frivolous argument which resulted in the multiplication of the proceedings is also sufficient to impose sanctions under § 1927." *Id.* (citations omitted). "[W]ith § 1927 as with other sanctions provisions, [d]istrict courts enjoy much discretion in determining whether and how much sanctions are appropriate." *Haynes v. City & Cnty. of San Francisco*, 688 F.3d 984, 987 (9th Cir. 2012) (internal quotation marks and citation omitted).

**DISCUSSION**

Defendants have requested sanctions in the form of fees from Plaintiff's counsel—but not Plaintiff himself—to cover three events: (1) $3,515.50 in fees and costs associated with the May 2014 deposition pursuant to Rule 30(d)(2) and the Court's inherent authority; (2) $2,475.00 in fees for preparing the successful motion to compel Plaintiff's deposition; and (3) $1,575.00 as a one-third portion of the fees incurred to prepare successful motion to strike the errata pursuant to Section 1927 and the Court's inherent authority. The Court will address the request for sanctions related to the earlier deposition sessions before turning to the fees associated with the motion to compel and motion to strike.

Before doing so, however, the Court addresses Plaintiff's argument that the Court should

1  deny all sanctions because Plaintiff's counsel acted with substantial justification and not with bad
2  faith. (*See* Dkt. No. 139 at 5.) It is true that Rule 37(b)(2)(C) provides that sanctions should not
3  be imposed where "the failure was substantially justified or other circumstances make an award of
4  expenses unjust." Thus, the Ninth Circuit limits 37(b)(2)(C) sanctions to instances where a
5  discovery violation is "due to willfulness, bad faith, or fault of the party." *Fair Housing of Marin*
6  *v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002) (quotation marks and citation omitted). But
7  Defendants are not seeking sanctions pursuant to Rule 37(b)(2)(C), which authorizes sanctions for
8  failure to comply with a court order. And in any event, many of Plaintiff's counsel's objections
9  and instructions not to answer were not valid, as will be discussed in further detail below.

**A.   Rule 30(d)(2) Sanctions for Improper Objections and Impeding Plaintiff's Deposition**

Defendants first seek reimbursement of fees and costs from Plaintiff's counsel under Rule 30(d)(2) and the Court's inherent authority. Having closely examined the transcript of the May 2014 deposition, the Court concludes that Plaintiff's counsel's repeated instruction not to answer questions about Plaintiff's employment history implicated Rule 30(d)(2) inasmuch as Plaintiff's counsel prevented Defendants from asking basic questions about a plaintiff that opposing counsel is plainly permitted to explore. Defense counsel sought to meet and confer with Plaintiff about the objections and about continuing the deposition, but Plaintiff's counsel refused. Sanctions for frustrating the Plaintiff's deposition are therefore appropriate.

On this point, Mr. Hyun's insistence that counsel should not be sanctioned because he had substantial justification for raising "valid privacy objections" is simply wrong. Mr. Hyun objected to questions about Plaintiff's employment—where he worked, what types of jobs he held, and the like—on the grounds that such information is protected by the right to privacy set forth in California's constitution. Not so. The privacy right protects personnel information, including an employee's confidential human resources file and records relating to discipline or demotions, but not the facts of employment itself. *See Foster v. ScentAir Techs., Inc.*, No. 13-cv-05772-TEH (MEJ), 2014 WL 4063160, at *2 (N.D. Cal. Aug. 15, 2014) (noting that an employee's personnel records from employment are subject to California's constitutional right to privacy); Cal. Labor Code § 1198.5(a) (defining "personnel records" as those files "that the employer maintains

6

1  relating to the employee's performance or to grievances concerning the employee"). The
2  information sought by Defendants is exactly the type of background information that opposing
3  counsel is permitted to explore with a plaintiff, and Plaintiff's counsel's objections and
4  instructions not to answer were not only improper, but frivolous. The cases upon which Mr. Hyun
5  relies, *San Diego Trolley, Inc. v. Superior Court*, 87 Cal. App. 4th 1083 (2011), and *Tien v.
6  Superior Court*, 139 Cal. App. 4th 528, 539 (2006), do not support his position that California's
7  constitutional right to privacy protects an employee from answering questions about where he
8  works. Plaintiff cites *San Diego Trolley* for the proposition that "personnel records and
9  *employment history* are within the scope of the protection provided by the state and federal
10 Constitutions." 87 Cal. App. 4th at 1097. But the facts and reasoning of *San Diego Trolley* make
11 clear that where an individual works does not fall within the protective sweep of the right to
12 privacy. *San Diego Trolley* was a writ proceeding related to a personal injury action in which a
13 plaintiff was hurt while climbing over the coupling device of two trolleys. 87 Cal. App. 4th at
14 1088. The plaintiff alleged that the trolley operator's negligence caused her injury. *Id.* The
15 operator did not return to work after the incident. *Id.* The plaintiff sought the operator's personnel
16 records relating to the operator's workers' compensation claim and her personnel file, including
17 whether the employer had knowledge of whether the operator was taking prescription drugs at the
18 time of the incident or whether they had received any warnings about her. *Id.* at 1089. The trial
19 court ordered those documents produced under seal, and the defendant and the operator filed a
20 petition for writ of mandate seeking to overturn the order compelling production of these
21 documents. *Id.* The appellate court ordered the employer to disclose any warnings they had
22 received about the operator, but determined that the plaintiff had not shown a compelling need for
23 the operator's entire personnel file. *Id.* at 1097-98. Thus, *San Diego Trolley* addressed personnel
24 records and confidential information about work performance known only to supervisors, and does
25 not in any way support Mr. Hyun's contention that the privacy right protects Plaintiff from
26 disclosing where he works.
27      Mr. Hyun's reliance on *Tien* fares no better. He cites language in *Tien* that the California
28 constitutional right to privacy "protects against the unwarranted, compelled disclosure of various

private or sensitive information regarding one's . . . *confidential personnel information*[.]" 139 Cal. App. 4th at 539 (quotation marks and citations omitted). But the facts of *Tien* are entirely off base: that case involved the defendant's request for the identity of all putative class members who contacted plaintiff's counsel after having received a "neutral mailer" from plaintiff's counsel. *See id.* at 533-34, 39. The case did not even address access to employment information. Put simply, it does not support Mr. Hyun's position in the slightest.

What is more, even *San Diego Trolley* and *Tien* recognize that the right to privacy over such confidential personnel information does not provide absolute protection, and instead requires balancing the disclosure against the "countervailing public interests in disclosure[,]" including the public interest in ascertaining the truth in legal proceedings and obtaining just results. *Tien*, 139 Cal. App. 4th at 539. "The more sensitive the nature of the personal information that is sought to be discovered, the more substantial the showing of the need for the discovery" is required. *Id.* at 540 (citation omitted). This makes Mr. Hyun's objection on grounds of an absolute right to privacy and instruction not to answer questions about where Plaintiff worked all the more improper. In his briefing and at oral argument, Mr. Hyun was unable to cite a single case that, after conducting this balancing, found that a plaintiff, in a class action or otherwise, has a privacy interest in where he works that outweighs the opposing party's request to get to know the plaintiff who is seeking to represent an entire class of plaintiffs. This is not a matter of the Court disagreeing with Mr. Hyun's position, as he suggested at oral argument; it is a matter of law.

Plaintiff's counsel also insists that his employment-privacy objections were appropriate because Defendants did not cite Plaintiff's employment history in their opposition to Plaintiff's motion for class certification, so the information was clearly irrelevant. This argument is a non-starter. The Court reminds Plaintiff's counsel that under Rule 30(d)(1), the deponent may be instructed not to answer "only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4)"—*i.e.*, not on relevance grounds.

At bottom, while it was defense counsel who ended the May 2014 deposition, he did so in the face of Plaintiff's counsel's unreasonable objections and improper instructions not to answer. When coupled with the continued improper objections during the June 2015 deposition, including

8

suggestive objections that appeared to be attempts to coach the witness in violation of Rule 30(d)(1), and especially Plaintiff's counsel's decision to leave the deposition just as defense counsel began to explore Plaintiff's adequacy as class representative, Rule 30(d)(2) is clearly implicated and some sanctions are appropriate.

Plaintiff's counsel's remaining arguments about the June 2015 deposition are equally unavailing. Plaintiff's counsel urges that he was forced to end the deposition early because defense counsel falsely claimed that Mr. Hyun was making improper speaking objections. But the record reflects that Mr. Hyun was, at times, doing just that. (*See, e.g.*, Dkt. No. 136-10 at 57:20-25 ("Lacks foundation, that he wrote this statement himself.").) The timing of Plaintiff's counsel's objections and ultimate walk-out suggest a purposeful attempt to disrupt the deposition to prevent Plaintiff from responding to further questions about his knowledge of the case with "I don't know answers." Thus, in addition to Rule 30(d)(2) sanctions being appropriate, sanctions pursuant to the Court's inherent authority may be equally warranted. *See Morales v. Zondo, Inc.*, 204 F.R.D. 50, 54 (S.D.N.Y. 2001) (noting that courts have use their inherent power to impose deposition costs on attorneys "whose disruptions of a deposition rendered it futile and ineffective, and were obnoxious to the orderly, reasonable, and proper conduct of an examination") (internal quotation marks and citation omitted).

Plaintiff's counsel next contends that he should not be sanctioned for any deposition conduct because defense counsel's deposition conduct was even worse than his. But Plaintiff never sought any relief for any discovery misconduct on Defendants' part. And while the transcript of Plaintiff's deposition reflects some heated exchanges between counsel that, in an ideal world, would have been avoided, the Court sees nothing worthy of sanctions in the written record of defense counsel's conduct. And that is not the question before the Court. Plaintiff's counsel's attempt to deflect attention from their own misconduct at this stage is without merit. For all of the above reasons, the Court concludes that sanctions against Plaintiff's counsel are appropriate because Plaintiff's counsel's inappropriate objections impeded, delayed, and frustrated the fair examination of Plaintiff.

The next question is what those sanctions should be. Some amount of fees is appropriate;

courts have awarded attorney's fees for an impeded deposition where counsel "engaged in repeated, unnecessary objections that slowed the progress of the examination, impeded the flow of information from the witness, and unnecessarily prolonged the proceedings." *BNSF Ry. Co.*, 2009 WL 3872043, at *3. These amounts have included travel costs and travel time when a deposition is cancelled. *See, e.g.*, *Plyley v. Grangaard*, No. C 12-05825 WHA, 2014 WL 1599930, at *4 (N.D. Cal. Apr. 21, 2014) (citation omitted); *Jones v. Lehigh Sw. Cement Co.*, No. 1:12-CV-00633-AWI-JL, 2014 WL 346619, at *6 (E.D. Cal. Jan. 30, 2014); *see also Aguilar v. Zep Inc.*, No. 13-cv-00563-WHO, 2014 WL 4063144, at *7 (N.D. Cal. Aug. 15, 2014) ("Travel time is compensable.") (citation omitted). Defendants have requested $2,362.50 in fees and $1,053.00 in expenses related only to the May 2014 deposition. The fees cover 10.5 hours of attorney time, including 3.5 hours of preparation and 7 hours to appear and attend the 20-minute deposition—including travel time—based on counsel's reduced rate of $225.00 per hour.[1] (Dkt. No. 133-1 ¶ 13; *id.* at 47.) The Court will award this full amount, which it concludes is reasonable. Although it was defense counsel who ended the May 2014 deposition, his rationale for doing so was justified based on Plaintiff's counsel's inappropriate and unjustified objections and instructions not to answer. Moreover, defense counsel is not seeking to reimburse the fees and costs associated with preparing for and attending the June 2015 deposition, which Plaintiff's counsel ended, and which also took place in Southern California and required travel time. Thus, the Court will award $2,362.50 in attorney's fees as sanctions.

Defendants also seek reimbursement of costs associated with the 2014 deposition, including $500.00 in airfare, $36.00 in airport parking, and $517.00 in expedited transcript fees. (Dkt. No. 133-1 ¶ 14; *id.* at 48-51.) Expenses, including deposition and travel costs, can be imposed as part of a Rule 30(d)(2) sanction. See Fed. R. Civ. P. 30(d)(2) (noting that the "court

---

[1] Mr. Dahlberg graduated from Yale University Law School, has practiced in commercial litigation for more than 35 years, and has lowered his customary $400 hourly rate for this matter. (Dkt. No. 331-1 ¶ 18.) The Court concludes that defense counsel's requested rate of $225.00 is reasonable—and in fact, quite low—given his background and experience and given the market rate for such attorneys in the Bay Area. *See Wynn v. Chanos*, No. 14-cv-04329-WHO, 2015 WL 3832561, at *2 (N.D. Cal. June 19, 2015) (finding $875/920 hourly rate reasonable for an attorney in the Bay Area with over twenty years of business litigation experience) (citations omitted).

may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred"); *see, e.g.*, *FCC v. Muzuho Medy Co.*, 257 F.R.D. 679, 683 (S.D. Cal. 2009). Normally, 30(d)(2) expenses are awarded in the amount that the moving party had to spend to return to the rescheduled or resumed deposition, *see, e.g.*, *Muzuho Medy Co.*, 257 F.R.D. at 683, unless sanctions are being imposed because the party failed to appear at the deposition altogether, *see, e.g.*, *Hill v. R+L Carriers Shares Servs., LLC*, No. C 09-01907 CW (MEJ), 2010 WL 4977763, at *4 (N.D. Cal. Dec. 2, 2010). Here, in contrast, Defendants seek the costs to attend the initial deposition, and have not offered any evidence regarding the costs to attend the second deposition in June 2015. Of course, the costs to attend the final deposition were negligible, as it occurred in San Francisco at the Court's order. However, under the circumstances presented here, imposing a sanction to include defense counsel's fees in traveling to one of the first two depositions is appropriate; although it was defense counsel who ultimately decided to stop the June 2014 deposition, both sessions ended early due to Plaintiff's counsel's improper objections. The Court will therefore award the $536 in travel costs. The court will also award the court reporter fees, including the fee for an expedited transcript, which defense counsel initially thought was necessary to move to compel, but ultimately opted not to in an attempt to avoid further problematic depositions by discussing settlement. The Court will therefore impose on Mr. Hyun as a discovery sanction the $1,053.00 in costs that Defendants seek.

Accordingly, the Court will impose on Mr. Hyun a discovery sanction of $3,415.50 pursuant to Rule 30(d)(2) and the Court's inherent authority for Plaintiff's counsel having improperly delayed, impeded, and frustrated Plaintiff's May 2014 deposition.

**B.  Motion to Compel Plaintiff's Deposition**

Defendants next seek an order requiring Plaintiff's counsel to reimburse Defendants for one-third of the fees incurred in preparing the successful request for an order compelling Plaintiff to be deposed in San Francisco. Defendants do not state the specific grounds under which they move for this particular sanction. However, sanctions are warranted pursuant to Rule 37(a)(5)(A), which *requires* the court to impose sanctions upon the party or attorney opposing an order to compel deposition testimony that is granted by the Court so long as the losing party's position was

11

not substantially justified and there are no "circumstances [that] make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A); *see Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 n.4 (9th Cir. 1983).

Such sanctions are warranted here. After Plaintiff unilaterally ended the June 2015 deposition, at Defendants' request the Court issued an order compelling Plaintiff to appear in San Francisco to complete the deposition. Plaintiff's opposition to the motion to compel was not substantially justified, nor are there other circumstances that make the award of expenses unjust. It is not entirely clear whether Plaintiff challenges the request for fees associated with the motion to compel; he argues generally that his counsel should not be sanctioned for walking out of the 2015 deposition because defense counsels' conduct was worse, but the Court already rejected this argument for the reasons explained above. Plaintiff does not otherwise address the merits of the request for sanctions on the motion to compel, contending only that the amount of fees sought in connection with the motion is unreasonable. Here, defense counsel seeks $2,475.00 in fees for preparation of the 6-page, single spaced letter brief to compel Plaintiff's deposition, the 8-page declaration in support of the request, and the six enclosed exhibits. (Dkt. No. 115.) Defense counsel's billing records indicate that he spent 10.8 hours working on the letter brief and supporting documents.[2] (Dkt. No. 133-1 at 54.) Given the need to review many pages of deposition testimony to produce a detailed and compelling letter brief, spending several hours on the brief is reasonable. Nor has Plaintiff provided any reason—either in his opposition to the request to compel or here—that their position in walking out of the deposition and therefore requiring the motion to compel was substantially justified or that other circumstances make an award of sanctions unjust. (*See* Dkt. No. 117.) Accordingly, the Court concludes that a discovery sanction of $2,475.00 in connection with defense counsel's prevailing request to compel Plaintiff's deposition is appropriate.

The question remains how to apportion that amount between the two attorneys that

---

[2] Defense counsel averred that he spent more than 11 hours writing the letter brief, but the Court discounts the .5 hour-entry titled "Communicate/Other Counsel as to resumption of the plaintiff depo." (Dkt. No. 133-1 at 54.) While related to the issue of Plaintiff's deposition, this entry does not reflect time spent working on the letter brief itself.

12

represent Plaintiff. Mr. Hyun defended the deposition and made the improper speaking objections during the second deposition session that led to the disagreements between counsel. However, co-counsel Mr. Lee is the one who declared the deposition over on the grounds that Mr. Dahlberg was interrupting Mr. Hyun. Thus, both of their actions created the need for Defendants to file the motion to compel. The Court therefore orders Plaintiff's counsel to equally share the cost of the motion to compel. Thus, the Court imposes sanctions on Mr. Hyun and Mr. Lee each in the amount of $1,237.50.

### C. Motion to Strike Plaintiff's Errata

Finally, Defendants ask the Court, pursuant to Section 1927 or its inherent authority, to impose sanctions on Plaintiff's counsel in the amount of $1,575.00 for attorney's fees incurred in connection with Defendants' successful motion to strike Plaintiff's errata to his deposition testimony. Mr. Dahlberg spent more than 21 hours preparing the motion and declaration in support, but seeks only 7 hours' worth of fees as a sanction representing the portion of the motion and reply devoted to the 11 changes that Plaintiff withdrew the day the motion to strike was due. (Dkt. No. 133-1 ¶ 16.)

Notably, Defendants are not seeking sanctions against Plaintiff or Plaintiff's counsel for issuing the notice of errata or proposing the deposition transcript changes. To that end, Plaintiff's renewed assertions that he has a statutory right to correct his deposition testimony, that the changes were timely, and that they were proper are both irrelevant and contrary to law: the Court has already explained that Plaintiff's proposed changes contradicted his earlier testimony and are therefore not allowed.[3] (Dkt. No. 132 at 3.) Instead, Defendants' request for sanctions pertains solely to Plaintiff's withdrawing the bulk of the proposed changes until the day Defendants'

---

[3] Buried within Plaintiff's opposition to the instant motion for sanctions is a request that the Court reconsider its Order striking Plaintiff's deposition changes. (Dkt. No. 139 at 17.) This request is both procedurally and substantively improper and the Court therefore declines to reconsider the merits of that earlier Order. *See* N.D. Cal. L.R. 7-9(a) ("No party may notice a motion for reconsideration without first obtaining leave of Court to file the motion."); *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) ("A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or there is an intervening change in the controlling law.") (internal quotation marks and citation omitted).

motion to strike was due.

It is hard to imagine that Plaintiff's counsel's timing in withdrawing the 11 untimely errata were not vexatious for the purposes of Section 1927 sanctions and in bad faith for the purposes of inherent authority sanctions. While Plaintiff's counsel has repeatedly averred that he had no idea when Defendants were planning to file the motion to strike the errata, the deadline was clear from the Court's order. (*See* Dkt. No. 127 at 2.) Moreover, Plaintiff's counsel has never offered any reasonable explanation of why they waited until the day the motion to strike was due to withdraw the majority of the errata at issue. Instead, Plaintiff's counsel offers only the statement that co-counsel for Plaintiff conferred over the course of several days before ultimately agreeing to withdraw the 11 proposed changes the day the motion to strike was due. Under the circumstances presented here, despite Plaintiff's counsel's protests to the contrary, the timing implies gamesmanship.

Plaintiff's counsel's suggestion that the Court's Order stated that "Plaintiff was free to withdraw his errata changes, without any sort of deadline" (Dkt. No. 139 at 17) misconstrues the Court's Order. The Court noted that Plaintiff is free to withdraw proposed deposition changes, but "given [his] insistence on making the changes," the Court would need to address them in the context of a motion to strike. (Dkt. No. 127 at 2.) Thus, the Court's Order was not a free pass for Plaintiff to cause Defendants to draft a motion to strike only to have Plaintiff withdraw the lion's share of the changes the day the motion was due. At oral argument, Plaintiff's counsel conceded that he knew the deadline for the motion was that day, but did not know what time Defendants planned to file the motion. This is largely irrelevant, since whatever time of day they planned to file, it is unlikely that Defendants held off on writing the motion until the day it was due.

On the other hand, Defendants have not established that they were prejudiced by Plaintiffs' eleventh hour withdrawal. If anything, the withdrawal actually saved Defendants from incurring further fees addressing the 11 errata in their reply brief. Accordingly, the Court declines to impose sanctions on Plaintiff's counsel due to their late withdrawal of the 11 errata addressed in Defendants' motion to strike.

**CONCLUSION**

For the reasons described above, the Court GRANTS IN PART Defendants' motion for sanctions. Specifically, the Court sanctions Mr. Hyun in the amount of $4,653.00, and Mr. Lee in the amount of $1,237.50.

This Order disposes of Docket No. 133.

**IT IS SO ORDERED.**

Dated: December 18, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge