UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDREW LEE,

Plaintiff,

v.

THE PEP BOYS-MANNY MOE & JACK
OF CALIFORNIA, et al.,

Defendants.

Case No.  12-cv-05064-JSC

**ORDER RE: MOTION TO CERTIFY CLASS**

Re: Dkt. Nos. 120, 133

Plaintiff Andrew Lee ("Plaintiff") filed this putative class action arising out of the attempted collection of monies incurred as a result of his alleged misuse of his employee discount and for changing the oil on his car while at work at Defendant The Pep Boys Manny Moe & Jack of California ("Pep Boys").  Plaintiff alleges that the settlement demand letters that Defendant Palmer Reifler & Associates ("Palmer") sent to Plaintiff and others violated various provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.  Plaintiff seeks to recover actual and statutory damages on behalf of himself and a putative nationwide class of individuals who received settlement demands from Palmer under federal law, and statutory restitution and injunctive relief under California law for a class of all individuals in California who received written settlement demands from Palmer seeking in excess of $500 citing California Penal Code Section 490.5.  Now pending before the Court is Plaintiff's motion for class certification. (Dkt. No. 120.)[1]  Upon

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[2] The following background is based on the allegations of the Second Amended Complaint and the factual record before the Court.  Plaintiff has submitted 24 objections to portions of evidence that

United States District Court
Northern District of California

consideration of the parties' submissions, including their supplemental briefing, and having had the benefit of oral argument on December 3, 2015, the Court DENIES Plaintiff's class certification motion.

## FACTUAL BACKGROUND

**A.    Factual Background of Claims[2]**

Pep Boys, a California corporation with retail auto stores throughout the state, employed Plaintiff at their Pasadena location from October 20, 2004 until April 17, 2012, when Plaintiff was terminated for allegedly performing an oil change on his own car at Pep Boys' garage and for using his employee discount for a friend.  Following his termination, Shaun MacDonald, an asset protection manager for Pep Boys, investigated Plaintiff's claims and met with Plaintiff, informing him that "Pep Boys could civilly collect any monetary damages civilly from you depending on the investigation[.]"  (Dkt. No. 136-3 ¶ 4.)  MacDonald also had Plaintiff sign a document entitled "Civil Demand Notice," which similarly advised that Pep Boys might seek damages from him, including "the costs of security and any other damages/penalties permitted by law" and that any questions should be directed to Palmer.  (*Id.* ¶ 5; *see also id.* at 6.)

On May 23, 2012 Plaintiff received a letter from Palmer sent on Pep Boys' behalf.  Palmer is a Florida-based law firm that serves retail clients, including Pep Boys, seeking to recover from customers who have been accused of shoplifting from retail stores and employees accused of acts of theft or dishonesty.  (Dkt. No. 120-2 at 48.)  Palmer's May 23 letter to Plaintiff provides in relevant part:

> This Law Firm represents Pep Boys concerning its civil claim against you in connection with an incident in their store 607 on 4/17/2012.

---

[2] The following background is based on the allegations of the Second Amended Complaint and the factual record before the Court.  Plaintiff has submitted 24 objections to portions of evidence that Defendants submitted, contending that certain portions are not admissible pursuant to various Federal Rules of Evidence.  (Dkt. No. 145.)  But unlike evidence presented at the summary judgment stage, evidence presented in support of class certification need not be admissible at trial. *See Dominguez v. Schwarzenegger*, 270 F.R.D. 477, 483 n.5 (N.D. Cal. 2010) (citations omitted).  The Court will therefore consider the proffered evidence, though the Court will not consider legal conclusions and will scrutinize where a declaration may conflict with the same witness's deposition testimony, or vice versa.

United States District Court
Northern District of California

1

2

3

4

> Pursuant to Cal. Penal Code § 490.5 "Theft of retail merchandise; civil liability", Pep Boys may consider moving forward with a statutory civil damages claim against you.
>
> **We ask that you settle this matter by making payment to us in the amount of $350.00 within twenty (20) days of the date of this letter.**  Upon receipt of full payment and clearance of funds, you will receive a written release of the statutory civil "penalty" claim.

5   (*Id.* (emphasis in original).)  Plaintiff received a second letter from Palmer dated June 12, 2012

6   with substantially similar language; the only thing that changed was the amount and payment

7   deadline: this time, the letter provided that "**[a]t this time, our client is requesting that you**

8   **settle this matter by making payment to us in the amount of $625.00 within ten (10) days of**

9   **the date of this letter.**"  (Dkt. No. 120-3 at 7 (emphasis in original).)

10          According to Palmer, these settlement demand letters were based on a boilerplate or

11  template form letter that Palmer sends on behalf of various retail clients.  (*See* Dkt. No. 120-2 at

12  37-38, 54-55.)  The template's wording includes placeholders for the client's name, recipient's

13  name and contact information, amount due, payment deadline, and the like.  (*Id.* at 55-56.)  Palmer

14  distinguishes between letters sent to "internals" and "externals": "internals" are current or former

15  employees of Palmer's clients, while "externals" are individuals who are not employees, such as

16  shoppers or customers patronizing Palmer's clients' stores.  (*Id.* at 52-53.)  The template letters

17  sent to both internal and external recipients cite California Penal Code § 490.5 as the basis for

18  statutory civil penalties; no other statutory section or other law is referenced.  (*Id.* at 58-59, 64-65.)

19  Palmer also has a template release form it uses when individuals make a settlement payment,

20  which releases the individual "from all statutory civil penalties" arising out of the incident.  (*Id.* at

21  31.)

22          Upon receiving the second settlement demand letter from Palmer, Plaintiff responded.  In

23  the letter, dated June 7, 2012, Plaintiff wrote that because Pep Boys' "has failed to provide

24  adequate proof for the grounds to my termination, and has not delivered paperwork detailing the

25  itemized expenses it seeks to recovery from this incident, I see no reason to make payment."  (Dkt.

26  No. 136-6 at 13.)  Then, on June 22, 2012, Plaintiff's attorney sent a further response to Palmer's

27  settlement demand letters, contending that  California Penal Code § 490.5 does not apply because

28  Plaintiff did not take any merchandise, and if anything he used Pep Boys' labor in completing his

United States District Court
Northern District of California

1  own oil change, so Plaintiff would not be paying Palmer.  (*Id.* at 15-16.)  Plaintiff never made any

2  settlement payments to Palmer regarding Pep Boys' claim, and Pep Boys never made any

3  complaint against him.

4  **B.      Procedural History**

5          Plaintiff initiated this action on August 21, 2012 in Alameda County Superior Court.  (Dkt.

6  No. 5-1.)  Defendants timely removed the lawsuit to federal court.  (Dkt. No. 1.)  Following the

7  Court's rulings on a motion to dismiss and motion for judgment on the pleadings, Plaintiff brings

8  two claims against Defendants.  First, Plaintiff contends that Palmer violated the FDCPA by: (a)

9  violating 15 U.S.C. § 1692g(a)(4) by failing to include in the settlement demand letter a statement

10  that if the consumer disputes the debt, the debt collector will obtain verification of the debt or a

11  copy of a judgment against the consumer and a copy of such verification will be mailed to the

12  consumer by the debt collector; (b) violating 15 U.S.C. § 1692g(a) by demanding payment of the

13  alleged debt in less than 30 days; and (c) violating 15 U.S.C. § 1692e(11) by failing to state that

14  the communications were sent on behalf of a debt collector.  Plaintiff seeks actual and statutory

15  damages as well as declaratory and injunctive relief.  Pursuant to his FDCPA claims, Plaintiff

16  seeks to certify a class of all "internal" individuals who received written communications sent by

17  or on behalf of Palmer at any time from August 20, 2008 to the present, in which a demand for

18  payment and/or an offer of "settlement" is made for alleged debts, civil liabilities, penalties, and

19  damages.

20          Second, Plaintiff argues that Palmer and Pep Boys engaged in unfair business practices in

21  violation of California law by sending settlement demand letters seeking more than the $500

22  maximum that Penal Code § 490.5 permits, which Plaintiff contends violates the Unfair

23  Competition Law's unlawful prong (predicated on a violation of the FDCPA), and the unfair

24  prong (as the letters unfairly and incorrectly imply to the reader that Palmer could seek more than

25  $500 pursuant to that statutory section).  As a result of this violation, Plaintiff seeks restitution for

26  any settlement money actually paid and to enjoin Defendants from continuing to engage in their

27  unlawful business practices.  In the UCL claim, Plaintiff wishes to certify a class of all individuals

28  in the State of California who received written communications sent by or on behalf of Palmer at

United States District Court
Northern District of California

1  any time from August 20, 2008 to the present, in which a demand for payment and/or an offer of

2  settlement is made for alleged civil penalties citing Penal Code § 490.5, in which the letter

3  demands in excess of $500.

4        After a discovery period not without controversy, Plaintiff filed the instant motion to

5  certify the classes described above.  The day before Defendants' opposition was due, Plaintiff

6  filed a motion to intervene by would-be plaintiff Keshaila Chang only as to the UCL claims in

7  light of "Defendant's [sic] attacks against Plaintiff's adequacy[.]" (Dkt. No. 135.)  The Court

8  stayed briefing on the motion to intervene pending resolution of the instant class certification

9  motion, as the Court's decision on certification may render moot the motion to intervene.[3]  After

10  the motion was fully briefed,[4] the Court heard oral argument on the motion for class certification

11  on December 3, 2015.  Because, at the hearing, Plaintiff represented that he had further evidence

12  to support the numerosity, ascertainability, and predominance of the proposed class, the Court

13  permitted Plaintiff to supplement the record, and afforded Defendants the opportunity to respond

14  to the submission.  (Dkt. Nos. 152, 154.)

15  **LEGAL STANDARD**

16        To succeed on his motion for class certification, Plaintiff must satisfy the threshold

17  requirements of Federal Rule of Civil Procedure 23(a) as well as the requirements for certification

18  under one of the subsections of Rule 23(b).  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588

19

20  [3] Plaintiff filed a response after the Court had already issued the stay, urging the Court to

21  reconsider its order. (Dkt. No. 141.)  But Plaintiff's submission does not address any grounds for reconsideration.  And indeed, the submission notes that the motion to intervene was filed to have

22  Ms. Chang replace Plaintiff as the proposed class representative "should Mr. Lee's adequacy prevent him from becoming the class representative." (*Id.* at 2.)  A determination finding Plaintiff

23  adequate would therefore moot the motion to intervene, as would a determination on the instant motion finding any of the other Rule 23 requirements lacking.  Accordingly, the Court's decision

24  to stay briefing on Chang's motion to intervene stands.

25  [4] Plaintiff filed a Request for Judicial Notice, which asks the Court to take judicial notice of a recent Order that Judge Freeman issued regarding improper use of copious footnotes. (Dkt. No.

26  146 & Ex. A.)  To the extent that Plaintiff wishes to the Court to strike Defendants' opposition, as Judge Freeman did in her order, the Court declines to do so here for two reasons.  First,

27  Defendants used far fewer footnotes than the offending brief that Judge Freeman's order addressed.  Second, while Defendants may have used a large number of lengthy footnotes,

28  Plaintiff's reply is no better: the 21-page brief is written in normal font size, but with minimal font spacing making it difficult to read, and the footnotes are written in an even smaller font.

(9th Cir. 2012).  Rule 23(a) provides that a case is appropriate for certification as a class action if

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  "[A] party must not only be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)," but "also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).  *Comcast v. Behrend*, —— U.S. ——, 133 S. Ct. 1426, 1432 (2013) (internal quotation marks, citations, and emphasis omitted).  In this case, Plaintiff contends that the putative class satisfies Rule 23(b)(3), which requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  "Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23."  *Mazza*, 666 F.3d at 588 (internal quotation marks omitted).

## DISCUSSION

## I.       The FDCPA Claims

### A.      Plaintiff Has Not Satisfied Rule 23(a)

Under Rule 23(a), the Court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  In addition to these explicit requirements of "numerosity, commonality, typicality and adequacy of representation," *Mazza*, 666 F.3d at 588, an implied prerequisite to class certification is that "the class must be sufficiently definite; the party seeking

United States District Court
Northern District of California

certification must demonstrate that an identifiable and ascertainable class exists." *Gold v. Midland Credit Mgmt., Inc.*, 306 F.R.D. 623, 628 (N.D. Cal. 2014) (quotation marks and citation omitted); *see also Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011); *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011).

1.     *Commonality*

The Court must find that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  "[C]ommonality requires that the class members' claims 'depend on a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke.'"  *Mazza*, 666 F.3d at 588-89 (quoting *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  "The plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation."  *Id.* (internal quotation marks and citation omitted).  Put another way, a question is common to the class where "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014).  The commonality requirement is construed permissively and is "less rigorous than the companion requirements of Rule 23(b)(3)."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  To that end, the commonality requirement can be satisfied "by even a single question."  *Trahan v. U.S. Bank Nat'l Ass'n*, No. C 09-03111 JSW, 2015 WL 75139, at *5 (N.D. Cal. Jan. 6, 2015).  At bottom, commonality "requires the plaintiff to demonstrate the class members have suffered the same injury."  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (quoting *Dukes*, 131 S. Ct. at 2551).

The common question of law for Plaintiff's FDCPA claim is whether the plain language of Defendants' demand letters violates the statute.  And indeed, "a debt collector's liability under § 1692e of the FDCPA is in issue of law[.]" *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011).  Commonality generally is found in FDCPA cases "where . . . the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters."  *Palmer v. Stassinos*, 233 F.R.D. 546, 549 (N.D. Cal. 2006) (quotation marks and citation omitted).  So it is here: the Court's resolution of whether the

United States District Court
Northern District of California

settlement demand letters' language is unlawful will generate a dispositive common answer to all class members. *See id.*; *see also Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1124-25 (9th Cir. 2014).

Defendants contend that there can be no commonality where, as here, an individualized inquiry will be necessary to determine class membership before the common question of the debt collector's liability can ever be reached. But once the class is defined—if ascertainable—then there will be a single common question to the class: does the language of Palmer's settlement demand letters violate the FDCPA. *See Gold*, 306 F.R.D. at 631 ("[The members of the proposed class have actually all suffered the same alleged injury [that] they all received the same allegedly misleading letter. Anyone who is not a member of the class has suffered no injury and also no violation of the law."); *Evon*, 688 F.3d at 1029-30 (finding the district court abused its discretion in finding that commonality was not satisfied in FDCPA case based on questions about whether the addresses on the debt collection letters were in fact business addresses—*i.e.*, who was a member of the class). Thus, Plaintiff has satisfied the commonality requirement.

### 2.    *Numerosity & Ascertainability*

A putative class satisfies the numerosity requirement "if the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Impracticability is not impossibility, and instead refers only to the "difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted). Related to numerosity is ascertainability. A class is ascertainable if it is defined by objective criteria and "sufficiently definite so that it is administratively feasible" to determine whether a particular individual is a member of the class. *Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW, 2012 WL 993531, at *1-2 (N.D. Cal. Mar. 23, 2012). Ascertainability "is needed for properly enforcing the preclusive effect of final judgment, that is, who gets the benefit of any relief and who gets the burden of any loss." *Xavier*, 787 F. Supp. 2d at 1089. Plaintiff fails to meet these requirements because he has not shown that there is a straightforward way to determine which individuals are class members.

A "threshold issue" in an FDCPA lawsuit is whether the dispute involves a "debt." *Turner*

8

*v. Cook*, 362 F.3d 1219, 1227-28 (9th Cir. 2004); 15 U.S.C. § 1692a(5).  To qualify as a "debt" under the FDCPA, the transaction leading to the debt must be a consensual consumer transaction. *Turner*, 362 F.3d at 1227.  Thus, to be a member of the FDCPA class, a class member's debt at issue must have arisen from a consensual consumer transaction; if not, the FDCPA does not apply.

Palmer's database administrator testified that there are 6,377 "internal" individuals who received demand letters during the class period.  (Dkt. No. 120-2 at 155.)  Plaintiff urges that those individuals are easily ascertainable from Palmer's own records.  That 6,377 individuals received the letter, however, does not end the inquiry because it is not clear that any of the 6,377 "internal" individuals who received Palmer's settlement demand letters did so because of a debt arising from a consensual consumer transaction.

In sustaining Plaintiff's FDCPA claim at the pleading stage, the Court concluded that Plaintiff had adequately alleged that the transactions that gave rise to his financial obligation to Pep Boys—and thus the money Palmer sought in its settlement demand letters—were consensual consumer transactions.  With respect to the misuse of his employee discount, the Court concluded that the underlying transaction itself—a purchase of goods—was a consensual exchange of money for merchandise, and the dispute was only whether Plaintiff should have paid more than he did. (*See* Dkt. No. 23 at 5-6.)  With respect to the unauthorized oil change, the Court noted that the complaint's allegations indicate that Plaintiff paid for the merchandise—the oil and oil filter—but not his labor, and it was unclear whether Pep Boys' policy merely required an employee to pay for his labor for on-the-clock oil changes, which Plaintiff eventually did, or prohibited employees from changing the oil in their own cars at work, regardless of whether they later paid.  (*See id.* at 8.)  Drawing all inferences in Plaintiff's favor, the Court concluded that Plaintiff had sufficiently alleged that the oil change debt arose from a consensual transaction.  (*Id.* at 9.)

But Plaintiff has not identified any evidence that establishes that any other class members' financial obligations to Palmer's clients arose out of a consensual consumer transaction.  To the contrary, Defendants submitted testimony from Palmer staff indicating that Palmer sent its letters to persons who stole merchandise, shoplifted, or engaged in other dishonest conduct—*i.e.*, conduct that would not qualify as a consensual consumer transaction.  (*See, e.g.*, Dkt. No. 57 ¶¶ 2-3; Dkt.

United States District Court
Northern District of California

No. 136-6 ¶¶ 7-8, 10; Dkt. No. 136-1 ¶¶ 3-4 (averring that Pep Boys only sends cases to Palmer "where [their] investigations determine that the employee committed theft, other similar crimes, or similar dishonest conduct which caused loss to the Company" and not when the former employee "simply owes us money arising out of a consumer transaction such as the sale of merchandise").) Plaintiff offers no evidence regarding the transactions underlying the 6,377 other "internal" settlement demand letters.  Indeed, there is nothing in the record that even suggests that *any* of the other letter recipients engaged in a consumer debt; to the contrary, every letter mentions theft and Section 490.5, which implies otherwise.

At oral argument, Plaintiff conceded that not all of the 6,377 letter recipients incurred their financial obligations through an FDCPA debt.  Initially, Plaintiff also conceded that he cannot show that any of the transactions resulting in the Palmer letter was consensual, but he argued that such a showing is unnecessary at the certification stage because the class definition is merely those consumers who received the letter.  Not so.  The letter is only unlawful if the FDCPA applies; the FDCPA applies only to a debt that arises from a consensual consumer transaction.

Plaintiff also insisted at oral argument that whether the letter recipients' financial obligation arose from a consensual consumer transaction is easily determined from Defendants' records.  Plaintiff admitted that he had not seen those records, but he insisted that he had obtained testimony that describes Defendants' files as containing the individual's name, the incident date, and facts about what happened that would allow the parties and the Court to easily determine whether it was a consensual transaction.  Plaintiff conceded that no such testimony was in the record before the Court, but he represented that Patricia Hastings and one other Palmer employee had testified about the firm's records.  The Court therefore permitted Plaintiff to supplement the record, and Plaintiff submitted testimony of Ms. Hastings and Natt Reifler.  (Dkt. No. 152.)  The testimony describes two different types of Palmer records, but does not show that the consensual-transaction determination can be made based on those records.

Ms. Hastings, an individual defendant in this action and former Palmer attorney, testified that she received reports via email "regarding cases in which letters were going to be sent which

had information about those cases."[5] (Dkt. No. 152 at 8.)  Ms. Hastings initially testified that she could not specifically recall what information was identified in the reports, but ultimately testified that it would include "briefly" the name of the letter's recipient, "the nature of the case, and the amount" at issue in the "civil claim for theft." (*Id.* at 6.)  She testified that the report included a "digest" that listed phrases identifying the claim, "like whether it was shoplifting or employee theft; usually . . . the amount; whether the offender was a minor or adult.  If there was anything unusual about it, there would be something in there." (*Id.* at 12-13.)  Ms. Hastings made clear that the "digest" or "fact" section of the report did not have any narrative describing the incident. (*Id.* at 12.)  This testimony does not indicate that Palmer's records are sufficient to determine whether the recipient engaged in a consensual consumer transaction.  Notably, in February 2014 the Court denied Plaintiff's request to compel production of these reports, concluding after reviewing a sample report *in camera* that the reports provide no information "as to the nature of the underlying incidents listed in the reports." (Dkt. No. 94 at 1.)  For the same reason, these reports will not demonstrate which recipients engaged in a consensual consumer transaction.

The records Mr. Reifler describes fare no better.  Mr. Reifler describes theft incident reports that are prepared by retailers—Palmer's clients—that Palmer staff uses to input relevant information into its own database. (Dkt. No. 152 at 18.)  According to Mr. Reifler, these reports include the "time, the date, the amount of merchandise at issue, whether any of it was recovered" as well as "factual descriptions of theft accusations" by the clients, which consist of factual narratives that the client prepares. (*Id.* at 20.)  There is no testimony about what the factual narrative is or what level of detail it contains.  But even if it has a great deal of information about the underlying incident, that would not be conclusive evidence of the type of transaction.  Using Plaintiff's case as the model reflects this problem well; the question as to the nature of Plaintiff's transactions have already been subject to motion practice and continue to be litigated in the instant motion.  Beyond a one-sided hearsay report, even when the facts of the underlying incident are

---

[5] Ms. Hastings testified that she only worked on California cases and therefore only received California reports. (Dkt. No. 152 at 9.)  The proposed FDCPA class is not limited to recipients of the letters that reside in California, as the UCL claim is.  The Court assumes for the purposes of this motion that Ms. Hastings' testimony about the records pertains to the entire class.

United States District Court
Northern District of California

1    fleshed out during discovery, there remains a genuine issue of material fact as to whether it was a

2    consensual transaction.  Thus, the testimony on which Plaintiff relies fails to establish that

3    Defendants' records can demonstrate which letter recipients incurred an FDCPA debt.[6]

4         As a result, the class is neither sufficiently numerous nor ascertainable.  To be sure, the

5    Court is mindful that the FDCPA is a "broad remedial statute," *Gonzales*, 660 F.3d at 1060, and

6    that certifying a class "will serve a 'deterrent' component to other debt collectors who are

7    engaging, or consider engaging in this type of debt collection tactic."  *Evon*, 688 F.3d at 1031-32.

8    Thus, even where some information about the manner of the debt incurred and whether it was

9    actionable is missing, at least one court in this District has still found the class reasonably

10   numerous and ascertainable for the purposes of certification.  *See Gold*, 306 F.R.D. at 629.  In

11   *Gold,* the court considered the plaintiff's request to certify a class of persons who incurred debt to

12   HSBC bank "primarily for personal, family, or household purposes" where the defendant debt-

13   collector's records did not show how the debts were incurred.  *Id.* at 628.  Only debts of a certain

14   type—those incurred for personal, family, or household purposes—were actionable and could

15   become part of the class.  At the certification stage, there was no evidence in the record about how

16   the proposed class members incurred their debts—and thus, whether they had actionable claims

17   and could be part of the class.  While the *Gold* defendants urged that the lack of evidence about

18   how the debt was incurred was fatal to the numerosity and ascertainability of the proposed class,

19   especially given that the plaintiff took no pre-certification discovery about the type of debts

20   incurred, the court nonetheless certified the class.  First, the court noted that "ascertainability for

21   *res judicata* purposes is less of a concern" in this scenario because "the disputed criterion is a

22   prerequisite to the claim."  *Id.* (quoting *Turner*, 362 F.3d at 1226-27).  Most importantly, the *Gold*

23   court determined that it would be "administratively feasible" to determine how each proposed

24   class member obtained the debt by asking a simple question on the claim form about the nature of

25

26   ───────────────

     [6] The Court finds troubling Plaintiff's representation at oral argument that he had not had the
27   opportunity to review any of these incident reports.  According to the sworn declaration of defense
     counsel, although the records were not within the scope of Plaintiff's discovery requests,
28   Defendants voluntarily produced over 100 incident reports, including Plaintiff's, on several
     occasions, including as late as October 2015, shortly before the hearing.  (Dkt. No. 154-1 ¶¶ 5-8.)

United States District Court
Northern District of California

the debt, and given that the named plaintiff had demonstrated that his own financial obligation was incurred as a personal debt and was therefore actionable, it "would be reasonable to infer" that other recipients of the defendants' collection letter incurred the debt in a similar manner. *Gold*, 306 F.R.D. at 629.

Not so here. Like *Gold*, Plaintiff here took no discovery to find out what type of transactions triggered the other internal individuals' financial obligations that led to Palmer's settlement demand letters. But unlike *Gold*—where the question of the nature of the debt could be answered with a yes or no question in a claim form—there is nothing so simple here to guide the inquiry. Finally, while in *Gold* the plaintiff had adequately established that his own debt was incurred for personal reasons and thus that he was a member of the proposed defined class, such is not the case here. At best, there remains a dispute as to whether Plaintiff's financial obligations arose out of consensual consumer transactions. And Plaintiff here concedes that there is no information in the record that suggests that any other recipient engaged in a consensual consumer debt. Thus, unlike *Gold*, where the Court found it reasonable to infer that at least some other recipients of the allegedly violating demand letters incurred their financial obligations in a similar manner as to the named plaintiff, the Court cannot make the same inference here.

For each of these reasons, the Court is therefore unable to ascertain, or even estimate, how many of the 6,377 internal individuals who received Palmer's settlement demand letters engaged in a consensual consumer transaction and therefore incurred a "debt" within the meaning of the FDCPA. Thus, Plaintiff has not adequately established numerosity or ascertainability for the purposes of identifying the FDCPA class. *See, e.g.*, *Tietsworth v. Sears, Roebuck & Co.*, No. 09-288, 2013 WL 1303100, at *3-4 (N.D. Cal. Mar. 28, 2013) (denying certification where "ascertaining class membership would require unmanageable individualized inquiry"). This alone is fatal to Plaintiff's motion to certify the FDCPA class.

### 3. *Typicality & Adequacy of Representation*

Rule 23(a)(3) also requires that "the [legal] claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality refers to the nature of the claim or defense of the class representative and not on facts surrounding the

United States District Court
Northern District of California

claim or defense." *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 510 (N.D. Cal. 2007) (citing *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Evon*, 688 F.3d at 1030 (internal quotation marks and citation omitted).  The typicality requirement ensures that "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982).

Rule 23(a)(4) imposes a closely related requirement to typicality: that the class representative will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To determine whether Plaintiff will do so, the Court must ask: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon*, 688 F.3d at 1031 (quoting *Hanlon*, 150 F.3d at 1020); *see also Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992) (noting that adequacy of representation "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive") (citations omitted); Fed. R. Civ. P. 23(g)(1)(B) (stating that "class counsel must fairly and adequately represent the interests of the class").  Because "the typicality and adequacy inquiries tend to significantly overlap[,]" *Woods v. Vector Mktg. Corp.*, No. C-14-0264 EMC, 2015 WL 5188682, at *11 (N.D. Cal. Sept. 4, 2015) (citation omitted), the Court addresses them together.  In reviewing a defendant's objections to the adequacy of the class representative, "a court must be wary of a defendant's efforts to defeat representation of a class on grounds of inadequacy when the effect may be to eliminate any class representation[.]" *In re Comp. Memories Sec. Litig.*, 111 F.R.D. 675, 682 (N.D. Cal. 1986).  As Plaintiff is the only class representative at this time, the Court will scrutinize Defendants' adequacy challenges closely.

                    i.   Whether Plaintiff's Interests Align with the Class

When a class representative challenges a practice that class members do not oppose, and in

United States District Court
Northern District of California

1  fact support and wish to remain in place, such interests "antithetical to the interests of such class

2  members" mean that the class representative cannot adequately represent those class members.

3  *Mayfield v. Dalton*, 109 F.3d 1423, 1427 (9th Cir. 1997) (citation omitted); *see also Hansberry v.*

4  *Lee*, 311 U.S. 32, 45 (1940) (holding that plaintiffs seeking to enforce an agreement cannot

5  represent class members who do not want it enforced).

6          Defendants urge that Plaintiff's interests are antagonistic to the class because the class

7  actually favors the retail settlements that Plaintiff's claims seek to overturn.  Specifically, while

8  Plaintiff's FDCPA claim challenges the settlements that Palmer sought and obtained from class

9  members, a Palmer employee avers that 90 percent of individuals who call to settle claims with the

10 firm's retailer clients "admit fault or responsibility for the underlying incident" and "state that they

11 want to settle the claim" for various reasons, including to assist with possible criminal

12 proceedings, to prevent further civil proceedings, or to put an embarrassing incident behind them.

13 (Dkt. No. 60 ¶ 3; *see also* Dkt. No. 136-6 ¶¶ 12-13, 18.)  However, "[a] difference of opinion

14 about the propriety of the specific relief sought in a class action among potential class members is

15 not sufficient to defeat certification."  *Californians for Disability Rights, Inc. v. Cal. Dep't of*

16 *Transp.*, 249 F.R.D. 334, 348 (N.D. Cal. 2008) (citations omitted).  Moreover, Defendants have

17 not identified any actual putative class members who would object, and the Court will not reject

18 the class representative based only on Defendants' own self-serving declarations.  *See id.*

19         But the atypicality of Plaintiff's claim contributes to a lack of adequacy.  Plaintiff attempts

20 to view typicality with an overly broad lens, arguing that he and the putative class received an

21 identical form settlement demand letter and therefore suffered from the same FDCPA violations.

22 And indeed, courts in FDCPA cases generally find that the named plaintiff "shares one legal

23 theory with the rest of the class" based on a practice of sending form collection letters.  *Hunt*, 241

24 F.R.D. at 511.  The current record, however, including the supplements that Plaintiff submitted

25 after oral argument, does not permit the Court to conclude that Plaintiff's claim is typical of the

26 class, since it is not clear whether any other letter recipients engaged in consensual consumer

27 transactions.

28         Defendants contend that even assuming other members of the proposed class received

15

1   Palmer's settlement demand letter following a consensual consumer transaction, Plaintiff's claims

2   are atypical because Plaintiff's debt arose from a non-consensual transaction.  (Dkt. No. 136 at

3   11.)  There is a dispute as to whether Pep Boys actually authorized the transactions underlying the

4   settlement demand to Plaintiff, and thus whether it was a consensual consumer transaction that

5   created a debt within the meaning of the FDCPA.  Thus, assuming that all class members actually

6   did engage in consensual transactions, Plaintiff's claim may not be typical of the class.

7          Plaintiff laments that finding a lack of typicality because of a dispute as to whether he

8   engaged in a consensual consumer transaction, and thus whether the FDCPA applies at all,

9   improperly delves into the merits of the case, which is not relevant at the class certification stage.

10  While "[f]actual variations among class members' grievances do not defeat a class action[,]" *Hunt*,

11  241 F.R.D. at 511 (citations omitted), the variation here is not limited to the specifics of Plaintiff's

12  claim, but rather whether Plaintiff has a claim at all compared to the other members of the class.

13  Thus, Plaintiff's FDCPA claim fails to meet the typicality requirement.

14                          ii.   Plaintiff's Credibility

15         Next, "credibility may be a relevant consideration with respect to the adequacy analysis,"

16  because "an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims."

17  *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) (citations and internal

18  quotation marks omitted); *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52,

19  61 (2d Cir. 2000) ("[C]lass representative status may properly be denied where the class

20  representatives have so little knowledge of and involvement in the class action that they would be

21  unable or unwilling to protect the interests of the class against the possibly competing interests of

22  the attorneys."); *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2015 WL 5138097, at *11

23  (N.D. Cal. Sept. 1, 2015) (finding the plaintiff's credibility problems were not sufficiently severe

24  to undermine their ability to serve as class representatives) (citation omitted); *Jovel v. Boiron, Inc.*,

25  No. 11-cv-10803-SVW-SHx, 2014 WL 1027874, at *5 (C.D. Cal. Feb. 27, 2014) (on motion for

26  sanctions, noting that counsel's lack of effort to include the named plaintiff in the litigation went

27  to the adequacy of the plaintiff's role as class representative, not whether sanctions were

28  warranted).  "That being said, credibility problems do not automatically render a proposed class

16

representative inadequate." *Harris*, 753 F. Supp. 2d at 1015.  Rather, "[o]nly when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members should such attacks render a putative class member inadequate." *Id.* (citation omitted). As one court in this District recently noted, "a finding of inadequacy based on the representative plaintiff's credibility problems is only appropriate where the representative's credibility is seriously 'questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as criminal conviction or fraud.'" *O'Connor*, 2015 WL 5138097, at *11 (citing *Harris*, 753 F. Supp. 2d at 1015); *see also Buzoiu v. Risk Mgmt. Alternatives, Inc.*, No. Civ. A. 03-3579, 2004 WL 1505061, at *6 (E.D. Pa. June 14, 2004) (noting that a class representative adequacy is called into question only when credibility problems affect questions directly related to the defendant's liability).

   None of Plaintiff's alleged credibility problems is severe enough to undermine his ability to serve as class representative.  For example, Defendants contend that Plaintiff's testimony about Pep Boys' policies renders him not credible.  With respect to the oil change policy, Defendants highlight Plaintiff's testimony that Hayden told him he could work on his own car, then that he could not remember what Hayden said, then that he did not remember what Pep Boys' policy was. (*See* Dkt. No. 136 at 30.)  But Plaintiff's testimony does not present a changing story as Defendants urge, so much as a vague description of what his supervisor told him during his employment.  This is not such stuff as severe credibility challenges are made of.  The same is true of Defendants' challenge to Plaintiff's testimony about the employee discount.  There is no internal contradiction here, either: Plaintiff repeatedly testified that Hayden permitted him to extend the discount.  Hayden refutes this testimony.  This is not an example of Plaintiff's clear dishonesty, but a factual dispute between witnesses.

   Finally, Defendants point to Plaintiff's attempt to submit 17 errata to his deposition testimony.  Plaintiff eventually withdrew 11 of the proposed errata, and the Court denied Plaintiff's request as to the remainder, noting that the errata proposed changes that fully contradicted Plaintiff's earlier deposition testimony.  (*See* Dkt. No. 132.)  Defendants' reliance on *Buzoiu* for the proposition that Plaintiff's contradictory errata render him inadequate is misplaced.  In *Buziou*,

United States District Court
Northern District of California

1    an FDCPA case, the plaintiff's errata changed her testimony about her receipt and review of the

2    purportedly unlawful debt collection letters—*i.e.*, questions that went directly to the defendants'

3    liability.  2004 WL 1505061, at *6.  Here, in contrast, the six errata that the Court reviewed do not

4    involve the case's merits; instead, the questions pertained to Plaintiff's relationship with his

5    attorneys and his knowledge of and participation in the case.  (*See* Dkt. No. 132 at 2.)  Because the

6    contradictory errata do not go to merits questions, they do not render Plaintiff inadequate, though

7    they do leave his credibility open to challenge more generally.

8    　　　In short, each of these credibility issues is apt fodder for cross-examination, but does not so

9    undermine Plaintiff's credibility as to render him inadequate.

10   　　　　　　　　iii.   Whether Plaintiff Will Prosecute the Action Vigorously

11   　　　However, the Court has significant doubts about whether Plaintiff will prosecute the action

12   vigorously.  Courts have found class representatives inadequate where the plaintiff "knew nothing

13   about the case and completely relied on counsel to direct the litigation."  *Moeller v. Taco Bell*

14   *Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004), *amended in part on other grounds by* 2012 WL

15   3070863 (N.D. Cal. July 26, 2012).  Put another way, "[t]he threshold of knowledge required to

16   qualify as a class representative is low; a party must be familiar with the basic elements of her

17   claim, and will be deemed inadequate only if she is 'startlingly unfamiliar' with the case.  It is not

18   necessary that a representative 'be intimately familiar with every factual and legal issue in the

19   case' rather, it is enough that the representative understand the gravamen of the claim.'"

20   *Californians for Disability Rights, Inc.*, 249 F.R.D. at 349 (citation omitted).  Given this standard,

21   class representatives are given some leeway when it comes to knowledge of and participation in

22   their case: in the FDCPA context, courts have allowed a class representative to proceed even

23   where she could not recall the exact nature of her debts, *see, e.g.*, *Gold*, 306 F.R.D. at 632; and

24   where he was unable to identify all defendants, *see, e.g.*, *Biancur v. Hickey*, No. C 95-2145 FMS,

25   1997 WL 9857, at *9 (N.D. Cal. Jan. 7, 1997).  However, where the class representative knows

26   nothing about the case and defers control over the action to counsel, he is inadequate.  *See, e.g.*, *In*

27   *re Facebook, Inc. PPC Advert. Litig.*, 282 F.R.D. 446, 454 (N.D. Cal. 2012) ("[Plaintiff] is also

28   not an adequate class representative for the addition reason that he testified in his deposition that

United States District Court
Northern District of California

18

1   he knows essentially nothing about the case, and indicated that he would defer to counsel in

2   prosecuting this action.").

3          To establish his knowledge of and participation in this case, Plaintiff, for his part, relies on

4   his declaration, and those of his counsel.  Plaintiff avers that he "ha[s] and continue[s] to be

5   willing to assist in the investigation of this matter," has made himself available for deposition, and

6   will be available for trial."  (Dkt. No. 120-3 ¶ 6.)  He asserts that he will "continue to perform

7   these obligations to the best of [his] ability" if appointed class representative.  (*Id.*)  Plaintiff

8   further avers that he "understand[s his] duties and responsibilities to the proposed class and will

9   carry out those duties as necessary."  (*Id.*)  The record gives the Court serious pause as to whether

10  these conclusory allegations are true.  On the one hand, Plaintiff was able to explain in the most

11  general terms his class representative role and the nature of his claims: he testified that he is "just

12  representing the people who got this letter" from Palmer because it was unfair and used terms he

13  did not understand.  (Dkt. No. 136-7 at 45.)  But his knowledge of and participation in the case

14  appears to end there.  Plaintiff testified that he did not know that the client is supposed to control

15  the litigation and could not identify anything he did specifically to control the case.  (Dkt. No.

16  136-7 at 67-68.)  He testified that he did not know who decided to sue whom, has never read the

17  complaint, and is unaware that his attorneys are seeking fees from defendants.  (*Id.* at 150, 72.)  At

18  his first deposition he was unable to identify the defendants, though he eventually did at his court-

19  compelled deposition.  (*Id.* at 71.)  He has never read any of the pleadings or the discovery, is

20  ignorant of the procedural aspects of class action litigation, believes that the next thing that will

21  happen in the case is that he and the class will receive money, and did not know that any

22  mediation had ever occurred.  (*Id.* at 73, 84.)  At bottom, he appears strikingly unfamiliar with his

23  class representative role and how his case is proceeding.

24          The cases on which Plaintiff relies are inapposite.  For example, in *Jordan v. Paul*

25  *Financial, LLC*, 285 F.R.D. 435 (N.D. Cal. 2012), the court certified the class notwithstanding the

26  defendant's argument that the named plaintiffs did not understand the nature of the claims because

27  the defendants attacked only "[a] single error in a complaint[,]" and the plaintiffs otherwise

28  testified that they understood the basis of the claims.  *Id.* at 461.  In *Edwards v. First American*

United States District Court
Northern District of California

*Corp.*, 289 F.R.D. 296 (C.D. Cal. 2012), the defendant's adequacy challenge centered on the plaintiff's testimony in an unrelated lawsuit, in which she testified that she was not aware of how the class action was proceeding; the court nonetheless found the plaintiff adequate because once the class action resumed the plaintiff demonstrated that she was keeping abreast of the case, traveled to attend oral argument, and was otherwise assisting counsel.  In *Hodges v. Akeens Solar, Inc.*, 274 F.R.D. 259 (N.D. Cal. 2011), the plaintiffs acknowledged a more fulsome understanding of their lawsuit—both in terms of the nature of their claims and the procedures of a class action. *Id.* at 267 (plaintiffs testified that they understood that their responsibilities as lead plaintiffs included the responsibility of determining whether to accept a proposed settlement or go to trial). In contrast, here Plaintiff's sole participation has been reviewing the initial Palmer settlement demand letters with his attorneys and attending his deposition.  While he was able to articulate in the most general of terms the nature of his claims, he appears to have deferred control over this litigation to his attorneys—especially in light of his admission that he did not know there had been any mediation efforts to date—which renders him inadequate to represent this class.

iv.   Counsel's Adequacy

Defendants also contend that Plaintiff's counsel will not represent the class "fairly, zealously[,] or well" given their failure to inform Plaintiff about the goings-on in the case, and their discovery misconduct and delay tactics, which are not only unprofessional, but prejudice Plaintiff and the class.  None of these challenges is valid.  The Court would normally expect counsel to keep the client better informed about the case, which does not appear to have happened here.  But there is nothing in the record from which the Court can conclude that Plaintiff's lack of knowledge is counsel's fault.  Next, Defendants argue that counsel's discovery misconduct renders them inadequate.  But Plaintiff's counsel's inappropriate objections during Plaintiff's deposition and proposed contradictory errata are and were more properly addressed in Defendants' motion for sanctions.  Third, Defendants urge that Plaintiff's counsel allowance of this case to proceed at a snail's pace prejudices the class and renders counsel inadequate.  But a significant portion of this action's delay was due to the parties' settlement efforts; the Court does not view this as Plaintiff's counsel's mistake.  Lastly, Defendants insist that Plaintiff's counsel is

1   inadequate because they "have known all along that Lee is not fit to represent the class." (Dkt.

2   No. 136 at 33.) The Court declines Defendants' invitation to shoehorn a difference of opinion into

3   an admission of any disqualifying impropriety.

4       Plaintiff's counsel has class action experience and in this case has defended a motion to

5   dismiss, a motion for judgment on the pleadings, and fought zealously during discovery. Under

6   the circumstances presented, the Court does not find counsel inadequate. However, Plaintiff's

7   own inadequacy—based on the combination of his conflict of interest with some class members,

8   his credibility issues, and his complete lack of involvement in this case—renders him unfit to

9   represent the class.

10                                     \* \* \*

11       In short, although Plaintiff has met the commonality requirement, he has failed to establish

12   typicality and class ascertainability and numerosity or that he is an adequate class representative,

13   and therefore fails to satisfy Rule 23(a).

14       B.     The FDCPA Claims Do Not Satisfy Rule 23(b)

15       Plaintiff must also meet one of the provisions of Rule 23(b) to succeed on his motion for

16   class certification of the federal claims. *See* Fed. R. Civ. P. 23(b); *Berger*, 741 F.3d at 1067.

17   Plaintiff maintains that he has satisfied subsections (2) and (3), but neither approach is successful.

18           1.     *The FDCPA Claims Do Not Satisfy Rule 23(b)(2)*

19       To certify a class under Rule 23(b)(2), the Court must find that "the party opposing the

20   class has acted or refused to act on grounds that apply generally to the class, so that final

21   injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

22   Fed. R. Civ. P. 23(b)(2). Ordinarily, there is no need "to undertake a case-specific inquiry into

23   whether class issues must predominate or whether class action is the superior method of

24   adjudicating the dispute" under the other subsections of Rule 23(b). *Dukes*, 131 S. Ct. at 2558.

25   Instead, with a Rule 23(b)(2) class, "[p]redominance and superiority are self-evident[,]" *id.*, and

26   "[o]nly a showing of cohesiveness of class claims is required." *Herskowitz v. Apple, Inc.*, 301

27   F.R.D. 460, 481 (N.D. Cal. 2014) (citation omitted). "The key to [a Rule 23(b)(2)] class is . . . the

28   notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the

class members or as to none of them." *Dukes*, 131 S. Ct. at 2557 (internal quotation marks omitted).  To certify a class under Rule 23(b)(2), it is generally sufficient "that class members complain of a pattern or practice that is generally applicable to the class as a whole." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010).  However, Rule 23(b)(2) does not authorize class certification "when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Dukes*, 131 S. Ct. at 2557.  Moreover, "class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) (quotation marks and citation omitted).  "As a result, Rule 23(b)(2) certification is available for monetary relief, if at all, only when such relief is [merely] incidental to the injunctive or declaratory relief sought." *Herskowitz*, 301 F.R.D. at 481 (citing *Dukes*, 131 S. Ct. at 2557).

Here, Plaintiff seeks a declaratory judgment that the language of Palmer's boilerplate settlement demand letters sent to all members of the proposed class violated the FDCPA.  "While the Ninth Circuit has not addressed the issue, every circuit court that has considered the question has concluded that private litigants may seek damages but not injunctive and declaratory relief under the FDCPA." *Jacobson v. Persolve, LLC*, No. 14-CV-00735-LHK, 2015 WL 3523696, at *9 at (N.D. Cal. June 4, 2015) (collecting cases from the Third, Seventh, Eleventh, Second, and Fifth Circuits holding that there is no private right to declaratory relief under the FDCPA).  In *Jacobson v. Persolve, LLC*, the court concluded that "[i]n the absence of controlling Ninth Circuit authority, and in light of the uniform agreement by the other circuits, . . . neither injunctive nor declaratory relief is available to a private litigant under the FDCPA." *Id.* at *10; *see also, e.g.*, *Palmer*, 233 F.R.D. at 552 ("Since the FDCPA does not allow private plaintiffs to obtain equitable relief, Rule 23(b)(2) does not support class certification in this suit.").

Notwithstanding the authorities mentioned above, some courts within the Ninth Circuit have certified an FDCPA class under Rule 23(b)(2). *See, e.g.*, *Hunt*, 241 F.R.D. at 513; *Gonzales v. Arrow Fin. Servs., LLC*, 233 F.R.D. 577, 583 (S.D. Cal. 2006); *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 596-97 (E.D. Cal. 1999).  But even if there were some basis for declaratory relief under the FDCPA, such certification would be improper here.  Like *Jacobson*, Plaintiff "has

22

failed to allege, much less produce any evidence that Plaintiff is likely to receive an allegedly illegal [settlement demand] letter from Defendants again." 2015 WL 3523696, at *11. Indeed, Defendants dropped the collection claim against Plaintiff and he is unlikely to receive another, as he no longer works for Pep Boys. (*See* Dkt. No. 136-6 ¶ 17.) Moreover, Plaintiff's proposed class focuses on individuals who received letters from August 2008 until the present date—not those who will receive the letters in the future—and therefore is "limited to Defendants' past conduct." *Jacobson*, 2015 WL 3523696, at *11. Thus, like *Jacobson*, "there is no risk of injury absent declaratory relief, [so] the Court is not persuaded that declaratory relief is appropriate or necessary." *Id.* (citation omitted); *see, e.g.*, *Tirabassi v. Chase Home Fin., LLC*, No. 14-8790, 2015 WL 1402016, at *10-11 (C.D. Cal. Mar. 24, 2015) ("[A] federal court may decline to consider a claim for declaratory relief where the substantive lawsuit will resolve the issues raised by the claim for declaratory relief.") (citation omitted). The Court therefore declines to certify a class pursuant to Rule 23(b)(2).

### 2.   *The FDCPA Claims Do Not Satisfy Rule 23(b)(3)*

Nor has Plaintiff satisfied Rule 23(b)(3): "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a.   Predominance

To meet the predominance requirement of Rule 23(b)(3), "the common questions must be a significant aspect of the case that can be resolved for all members of the class in a single adjudication." *Berger*, 741 F.3d at 1068 (internal quotation marks and alterations omitted). Notably, "the predominance inquiry presumes that there is commonality and entails a more rigorous analysis[.]'" *Gold*, 306 F.R.D. at 633 (quoting *Hanlon*, 150 F.3d at 1022). While Rule 23(a)(2) asks only whether there is a common issue, the predominance inquiry considers the common questions, "focuses on the relationship between the common and individual issues," *Hanlon*, 150 F.3d at 1022, and requires the court to weigh the common issues against the individual issues. *See Dukes*, 131 S. Ct. at 2556. Predominance is found when common questions

United States District Court
Northern District of California

1   represent a significant portion of the case and can be resolved for all class members in a single

2   adjudication.  *Hanlon*, 150 F.3d at 1022.

3          "Considering whether 'questions of law or fact common to the class predominate' begins,

4   of course, with the elements of the underlying cause of action."  *Erica P. John Fund, Inc. v.*

5   *Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011).  "In determining whether common questions

6   predominate, the Court identifies the substantive issues related to plaintiff's claims . . . then

7   considers the proof necessary to establish each element of the claim or defense; and considers how

8   these issues would be tried."  *Gaudin v. Saxon Mortg. Servs., Inc.*, 297 F.R.D. 417, 426 (N.D. Cal.

9   2013) (citation omitted).  "The predominance analysis is a pragmatic one: it is not a numerical

10  analysis and instead is a qualitative assessment of overriding issues in the case, despite the

11  existence of individual questions."  *Ellsworth v. U.S. Bank, N.A.*, No. C 12-02506 LB, 2014 WL

12  2734953, at *19 (N.D. Cal. June 13, 2014) (citation omitted).

13         Predominance is the final death knell to Plaintiff's request for certification, again because

14  of the difficulty in determining whether other letter recipients engaged in consensual consumer

15  transactions.  The common question present here—whether the language of the letter violates the

16  FDCPA—has often led to a finding of predominance in FDCPA cases.  *See, e.g.*, *Jacobson*, 2015

17  WL 3523696, at *6; *Gold*, 306 F.R.D. at 634; *Hunt*, 241 F.R.D. at 514; *Abels v. JBC Legal Grp.,*

18  *PC*, 227 F.R.D. 541, 547 (N.D. Cal. 2005).  But none of those cases involved the threshold

19  question present here that requires the Court to inquire, on a member-by-member basis, whether

20  the nature of the transaction giving rise to Palmer's settlement demand letter was, in fact, a

21  consensual consumer transaction.  The Court cannot even begin to reach the common question

22  before addressing this issue, and—considering the litigation to date over whether Plaintiff's

23  transactions qualify as such—there is no easy method of resolution short of an individual inquiry

24  into each class member's transaction.  *See Soto v. Comm. Recovery Sys., Inc.*, No. C 09-2842 PJH,

25  2011 WL 6024515, at *7 (N.D. Cal. Dec. 5, 2011).

26         In *Soto*, the court denied certification of an FDCPA class on predominance grounds

27  because liability hinged on the applicability of law, which in turn hinged on "whether class

28  members obtained purchase money loans secured by primary owner-occupied residences."  *Id.* at

United States District Court
Northern District of California

1   *7-8.  Because that question was not susceptible to classwide proof, there was a need to conduct

2   an individualized inquiry into whether each class member was, indeed, part of the class; thus, the

3   common claims did not predominate.  *Id.* at 7.  In contrast, in *Gold*, the court concluded that the

4   common claim of whether the language of a debt collection letters did predominate over the

5   question of whether the nature of the debt rendered each individual part of the class because it was

6   easily capable of determination classwide.  306 F.R.D. at 633.  This case is more akin to *Soto* than

7   *Gold*.  As described above in the context of numerosity and ascertainability, there is no easy,

8   classwide method to determine the nature of each former employees' debts; instead, an individual

9   inquiry is required before the Court can even reach the common question of whether the letter

10  violates the FDCPA.  Even if there is some information in Defendants' records that contains

11  evidence of consensual transactions, there still would be no predominance because the Court—or a

12  jury—would need to evaluate the records for each class member before making a determination.

13  In view of the critical nature of this individual inquiry—*i.e.*, there is no liability whatsoever for

14  individuals who did not engage in a consensual consumer transaction—and since resolution of the

15  issue will require delving into the individual circumstances of each class member's incident, the

16  Court concludes that the common issues do not predominate.  Thus, Plaintiff has failed to satisfy

17  the predominance element of Rule 23(b)(3) with respect to his FDCPA claims.

18                          b.      Superiority

19          Because the Court concludes that Plaintiff has not met the predominance requirement, he

20  need not address the superiority requirement.  *In re High-Tech Emps. Antitrust Litig.*, 289 F.R.D.

21  555, 563-64 (N.D. Cal. 2014); *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 268 F.R.D.

22  604, 613 (N.D. Cal. 2010); *see, e.g.*, *Soto*, 2011 WL 6024514, at *8.  Suffice it to say that class

23  action treatment is not superior to case-by-case claims here because any classwide trial would be

24  derailed by individualized inquiries into how each proposed class member incurred the alleged

25  financial obligation to his or her employer, making a class action no more efficient or convenient

26  than numerous individual trials.

27                                  *  *  *

28          Although Plaintiff has identified a common question, he has not met his burden of

                                        25

1   establishing numerosity, ascertainability, and typicality, nor has he shown that the common

2   question would predominate over the case-by-case inquiry into the nature of each individual's

3   transaction.  Plaintiff therefore fails to establish that the class is certifiable under Rule 23(a), and

4   in any event, has not met the requirements of Rule 23(b).  The Court therefore denies Plaintiff's

5   motion to certify an FDCPA class.

6   **II.    The UCL Claims**

7          The Court addresses Plaintiff's proposed UCL class separately.  Plaintiff must meet the

8   same Rule 23(a) and (b) requirements as set forth above.  As for Rule 23(a), Defendants only

9   challenge two requirements: typicality and commonality.  The Court with nevertheless address

10  each factor in turn.

11         A.    <u>The UCL Claims Do Not Satisfy Rule 23(a)</u>

12                1.    *Numerosity & Ascertainability*

13         Defendants do not challenge numerosity and ascertainability of the UCL class.  And

14  indeed, Palmer's database administrator testified that as of May 14, 2015 there were 189,269

15  Californians who had received settlement demand letters from Palmer that demand more than

16  $500 and reference Penal Code § 490.5.  (Dkt. No. 120-2 at 151-52.)  This large number is

17  sufficiently high to make joining all members impracticable and is easily ascertainable, given that

18  the number was determined based on Palmer's own records.

19                2.    *Commonality*

20         As for commonality, Plaintiff urges that the common question of law for the entire UCL

21  class is whether Defendants' "demand letters seeking more than $500 pursuant to Penal Code

22  § 490.5 violate the UCL[.]"  (Dkt. No. 120-1 at 14.)  Plaintiff includes no other discussion of

23  commonality, noting instead that this is an "undisputed common question[ ] of fact and law which

24  easily satisf[ies] Rule 23(a)(2)."  (*Id.*)  With respect to the unlawful prong, which relies on a

25  predicate violation of the FDCPA, this claim suffers from the same issues with respect to

26  commonality, typicality, and predominance discussed above; if Plaintiff cannot establish via

27  classwide evidence in a single determination that all class members' rights under the FDCPA were

28  violated, he in turn cannot certify a class under the UCL predicated on such an unascertainable

United States District Court
Northern District of California

1    violation.

2         With respect to the unfair prong, Defendants contend that whether the demand letters seek

3    more than Section 490.5 provides is not a common question because an inquiry into whether

4    conduct is unfair under the UCL involves balancing the harm against the social utility of the

5    conduct, and thus can never be subject to class-wide resolution.  (*See* Dkt. No. 136 at 16.)  But

6    there is no bright line rule against certifying a UCL class.  And indeed, courts have found that

7    certain UCL claims met the commonality requirement.  *See, e.g.*, *Johnson v. Gen. Mills, Inc.*, 276

8    F.R.D. 519, 521 (C.D. Cal. 2011) (certifying UCL consumer class when all members were "misled

9    by a common advertising campaign that had little to no variation").  Here, because the UCL claim

10   challenges the Defendants' global practice of seeking more than Section 490.5 allows, there is a

11   question of law common to the class.

12            3.    *Typicality*

13        The bulk of Defendants' challenge to certification of the UCL class addresses the typicality

14   requirement.  Defendants contend that Plaintiff is not typical of the UCL class because he has no

15   UCL remedy and he was harmed, if at all, in a way distinct from the way the class was harmed.[7]

16   (*See* Dkt. No. 136 at 13.)

17        The remedies available under the UCL are injunctive relief and restitution.  *See Madrid v.*

18   *Perot Sys. Corp.*, 130 Cal. App. 4th 440, 452 (2005).  Plaintiff seeks both for the UCL class:

19   injunctive relief stopping Defendants from sending these settlement demand letters, and restitution

20   to return settlement demand money paid in response to the unfair letters.  But Plaintiff himself is

21   not entitled to either.  Injunctive relief is limited to ongoing wrongs, or wrongs with a likelihood

22   of occurring in the future.  *See Ellis*, 657 F.3d at 978-79.  Here, Plaintiff does not allege that

23   Palmer is continuing to send him settlement demand letters seeking more than the statutory limit

24

25   [7] Defendants also argue—albeit solely in a footnote, of which there are many—that Plaintiff lacks
     standing to assert the "unfair" prong of his UCL claim.  (*See* Dkt. No. 136 at 14.)  The Court will
26   not address the issue here, as it was not in the body of Defendants' opposition.  *See Rambus Inc. v.*
     *Hynix Semiconductor Inc.*, 569 F. Supp. 2d 946, 985 (N.D. Cal. 2008). (noting that the court need
27   not consider "substantive arguments raised only in a footnote").  In any event, Defendants appear
     to concede that the letters injured Plaintiff inasmuch as he paid $100 to his attorney to respond.
28   Thus, Defendants have conceded that Plaintiff has UCL standing, and instead contend only that
     his injury is different than the rest of the class.

that Penal Code § 490.5 allows. To the contrary, Plaintiff no longer works for Pep Boys and Palmer and Pep Boys dropped the settlement demand against him. (*See* Dkt. No. 136-6 ¶ 17.) Thus, he is not entitled to injunctive relief. Nor is Plaintiff entitled to restitution. "[I]n the context of the UCL, 'restitution' is limited to the return of property or funds in which plaintiff has an ownership interest[.]" *Madrid*, 130 Cal. App. 4th at 453. "Under the UCL, an individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest." *Korea Supply Co. v. Lockheed Martin Co.*, 29 Cal. 4th 1134, 1148 (2003). Put simply, UCL restitution is limited to money in the hands of the defendants. Plaintiff alleges no such money here: he did not pay any settlement funds to Palmer or Pep Boys in response to the settlement demand letter, and instead only paid an attorney $100 to respond to Palmer's letter. (*See* Dkt. No. 136-7 at 43.) At oral argument, Plaintiff contended that the Court had already found Plaintiff's $100 payment to attorneys sufficient to state a UCL claim. But Plaintiff confuses standing with typicality: the $100 was enough harm to show that Plaintiff was injured, but does not indicate that Plaintiff is entitled to restitution like the rest of the class. He is not. Courts within the Ninth Circuit have concluded that the availability to the rest of the class of a "different set of remedies" than that of the named plaintiff "undercuts the typicality of his claims[.]" *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 557 (C.D. Cal. 2012). So it is here.

    In addition, Defendants argue that Plaintiff's claim is not typical because his injury—*i.e.*, the manner in which he incurred damages—is different from the rest of the putative class. Defendants rely on California law for certifying class actions that holds that "[a]lthough difference in computing damages is not sufficient to deny class certification, differences in the actual existence of damages or in the manner of incurring damages are appropriate considerations." *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 664-65 (1993).[8] Indeed, Rule 23 similarly requires for typicality that the named plaintiff suffer the same injury in the same manner as the

---

[8] Defendants actually cited an unpublished, non-citable California case, *Howard v. GC Servs., Inc.*, A140351, 2015 WL 5163328, at *14 (Cal. Ct. App. Sept. 3, 2015). (*See* Dkt. No. 136 at 15.) As *Howard* relied on and interpreted the published case of *Caro*, the Court cites *Caro* here.

United States District Court
Northern District of California

United States District Court
Northern District of California

proposed class. *See Smith v. Am. Greetings Corp.*, No. 14-cv-02577-JST, 2015 WL 4498571, at *4 (N.D. Cal. July 23, 2015) (finding typicality where the named plaintiffs "allege they suffered the same injuries, in the same manner, as the proposed class"). While typicality does not require that the class representative's injury be the exact same amount as the harm to the members of the class, it still must be of similar ilk. Unlike Plaintiff, who was damaged by paying $100 to his attorney, Plaintiff alleges that the rest of the UCL class was damaged by actually paying too much to settle the retailers' claims—*i.e.*, more than Penal Code § 490.5 permits. Moreover, given Plaintiff's rationale in his own letter (the incident was not sufficiently detailed nor the costs itemized) and his attorney's letter (that Plaintiff, at best, unlawfully took Pep Boys' services, but not goods), a fact finder could easily conclude that Plaintiff's $100 attorney fee had nothing to do with the request to pay more than Section 490.5 permits. This further undercuts Plaintiff's typicality.

Thus, while Plaintiff has established standing to bring a UCL claim on his own behalf, because he has no claim for restitution he has not met his burden of establishing that his claims are typical of those in the class.

### 4.   *Adequacy*

The adequacy analysis is the same for Plaintiff's UCL claims as his FDCPA claims. In addition, that Plaintiff is not entitled to the remedies available to other class members further undercuts his adequacy. *See Bohn v. Pharmavite, LLC*, No. CV 11-10430-GHK AGRx, 2013 WL 45178955, at *1 (C.D. Cal. Aug. 7, 2013) (noting that a plaintiff is not an adequate representative on claims he cannot pursue). Further, unlike the FDCPA claim, the UCL claim involves anyone who received the letter—not just former employees whose financial obligation arose from a consensual consumer transaction—including shoplifters. At his deposition, Plaintiff expressed concern about his ability to represent shoplifters. (*See* Dkt. No. 136-7 at 78.) This further renders him an inadequate class representative. Having found that Plaintiff has failed to satisfy the Rule 23(a) requirements for his UCL claim, the Court need not address whether he has met the requirements of Rule 23(b).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### CONCLUSION

For the reasons described above, the Court DENIES Plaintiff's motion for certification.

This Order disposes of Docket No. 120.

**IT IS SO ORDERED.**

Dated: December 23, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge