UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| ANDREW LEE,<br><br>    Plaintiff,<br><br>v.<br><br>THE PEP BOYS-MANNY MOE & JACK OF CALIFORNIA, et al.,<br><br>    Defendants. | Case No. 12-cv-05064-JSC<br><br>**ORDER DENYING MOTION TO INTERVENE**<br><br>Re: Dkt. No. 135 |
|---|---|

Plaintiff Andrew Lee ("Plaintiff") filed this putative class action arising out of the attempted collection of debt incurred as a result of his alleged misuse of his employee discount and for changing the oil on his car while at work at Defendant The Pep Boys Manny Moe & Jack of California ("Pep Boys"). Plaintiff alleges that the settlement demand letters that Defendant Palmer Reifler & Associates ("Palmer") sent to Plaintiff and others violated various provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. Now pending before the Court is proposed intervenor Keshaila Chang's motion to intervene as of right as an additional plaintiff and class representative on the UCL claim, or in the alternative, for permissive intervention on that claim. (Dkt. No. 135.) Having considered the parties' submissions, and having had the benefit of oral argument on January 21, 2016, the Court DENIES the motion.

**BACKGROUND**

The factual and procedural background of this case has already been explained in detail in the Court's Order denying class certification, which the Court incorporates here in full. *Lee v. Pep Boys—Manny Moe & Jack of Cal.*, No. 12-5064, 2015 WL 9480475, at *1-3 (N.D. Cal. Dec. 23, 2015). Nevertheless, the Court will recount the background relevant to the motion to intervene.

## I. Procedural History

Plaintiff initiated this action on August 21, 2012 in Alameda County Superior Court. (Dkt. No. 5-1.) Defendants timely removed the lawsuit to federal court. (Dkt. No. 1.) Following the Court's rulings on a motion to dismiss and motion for judgment on the pleadings, Plaintiff brings two claims against Defendants. The first claim alleges that the language of the letter Defendants sent to Plaintiff violates various provisions of the FDCPA. Second, Plaintiff argues that Palmer and Pep Boys engaged in unfair business practices in violation of California law by sending settlement demand letters seeking more than the $500 maximum that California Penal Code § 490.5 permits, which Plaintiff contends violates the Unfair Competition Law's unlawful prong (predicated on the FDCPA violation), and the unfair prong (as the letters unfairly and incorrectly imply to the reader that Palmer could seek more than $500 pursuant to that statutory section). As a result of this violation, Plaintiff seeks restitution for any settlement money that class members actually paid to Defendants and to enjoin Defendants from continuing to engage in their unlawful business practices. Chang seeks to intervene solely on this UCL claim.

Plaintiff filed a motion for class certification on September 21, 2015. (Dkt. No. 120.) With respect to the UCL claim, Plaintiff sought to certify a class of all individuals in the State of California who received written communications sent by or on behalf of Palmer at any time from August 20, 2008 to the present, in which a demand for payment and/or an offer of settlement was made for alleged civil penalties citing Penal Code § 490.5, and in which the letter demands in excess of $500. The Court stayed briefing on the class certification motion pending resolution of a discovery dispute—namely, Defendants' motion to strike Plaintiff's proposed deposition changes, which sought to make changes to his testimony that largely pertained to his fitness as class representative. (Dkt. Nos. 127.) The Court granted the motion to strike on October 27, 2015 and reset a briefing schedule on the class certification motion. (Dkt. No. 132.) Chang then filed the instant motion to intervene on November 5, 2015, the day before Defendants' opposition to the motion to certify the class was filed, as ordered. (Dkt. Nos. 135, 136.) The Court stayed further briefing and hearing on the motion to intervene pending resolution of the class certification motion, "as the Court's decision on certification may render moot the motion to intervene." *Lee*,

2

2015 WL 9480475, at *3; *see also id.* at *3 n.3.

The Court denied class certification on December 23, 2015. *See id.* at *16. The Court concluded that the proposed UCL class was numerous and ascertainable and that there was a question of law common to the class—that is, whether it is an unfair business practice for the letters to cite only Penal Code § 490.5 but seek more in civil penalties than the statute permits—but denied certification on the grounds that Plaintiff had failed to establish that his claims were typical of those in the class and, relatedly, because Plaintiff was an inadequate class representative. *Lee*, 2015 WL 9480475, at *14-16. Defendants and Chang subsequently fully briefed the instant motion to intervene.

## II.     Intervenor's Background

Chang avers, and the proposed complaint in intervention alleges, that she received two debt collection letters from Palmer. (Dkt. No. 135-4 ¶ 2; Dkt. No.135-3 ¶ 7.) The letters were addressed to "Parent/Guardian of Keshaila Chang[.]" (Dkt. No. 135-4 at 4.) The second of the letters explains that the law firm represents Urban Outfitters "concerning its civil claim against you in connection with an incident involving your child in their store[.]" (*Id.*) The letter states that "[p]ursuant to common law and Cal. Penal Code § 490.5, 'Theft of retail merchandise; civil liability', Urban Outfitters may consider moving forward with a civil damages claim against you." (*Id.*) The letter further provides that "At this time, our client is requesting that you settle this matter by making payment to us in the amount of $625.00 within ten (10) days of the date of this letter." (*Id.* (emphasis omitted).) Chang's father settled the claim with Palmer for $100.00. (Dkt. No. 157-2 ¶ 6.) Chang later reimbursed her father for his payment to Palmer. (Dkt. No. 135-4 ¶ 2.)

## LEGAL STANDARD

Rule 24 of the Federal Rules of Civil Procedure provides for two types of intervention: intervention as of right and permissive intervention. A putative intervenor must satisfy four elements to qualify for as-of-right intervention:

> (1) the applicant's motion must be timely; (2) the applicant must assert an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that

> without intervention the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by other parties.

*United States v. Oregon*, 839 F.2d 635, 637 (9th Cir. 1988). "Although the party seeking to intervene bears the burden of showing those four elements are met, 'the requirements of intervention are broadly interpreted in favor of intervention.'" *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (internal quotation marks omitted).

An applicant who requests permissive intervention must prove that it meets three threshold requirements: "(1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998) (citation omitted). If the proposed intervenor meets those elements, then the court has broad discretion to grant or deny the motion but "must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id.*; *see also* Fed. R. Civ. P. 24(b)(3).

For both as-of-right and permissive intervention, courts generally construe Rule 24 liberally in favor of intervention. *See Cohorst*, 2011 WL 3475274, at *4 (citing *Wash. State Bldg. & Constr. Trades Council v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982)). For class actions in particular, Rule 23 also provides that a court may allow class members to intervene "to protect class members and fairly conduct the action." Fed. R. Civ. P. 23(d)(1)(B).

## DISCUSSION

### I. Chang is Not Entitled to Mandatory Intervention

The first issue is whether Chang is entitled to intervention as-of-right under Rule 24(a). One of the four requirements for as-of-right intervention is easily met here: the Court ruled previously that Plaintiff Lee is not an adequate representative of the UCL putative class. 2015 WL 9480475 *16. The other three requirements are not so easily resolved.

"An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) (citation omitted). "An applicant generally satisfies the 'relationship' requirement only if the resolution of

4

the plaintiff's claims actually will affect the applicant." *Id.* at 410 (citations omitted). Here, a finding of liability against Defendant Palmer on the UCL claim will not legally affect Chang. Palmer did not send a debt collection letter to Chang, and she did not pay any money to Palmer; thus, Palmer arguably owes no restitution to Chang. *See Korea Supply Co. v. Lockheed Martin Co.*, 29 Cal.4th 1134, 1148 (2003) ("Under the UCL, an individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest."); *see also Lee*, 2015 WL 9480475, at *15 ("Put simply, UCl restitution is limited to money in the hands of the defendants."). Palmer may owe money to Chang's father—the person to whom Defendant's debt collection letter was directed—but Chang's father is not the proposed intervenor. Indeed, if Palmer were to reimburse Chang's father, nothing in this lawsuit would require Chang's father to reimburse Chang. Thus, Chang does not have a "significant protectable interest" in this lawsuit.

Further, Chang is arguably not even a putative member of Plaintiff's proposed UCL class. Plaintiff identifies the class as follows:

> All individuals in the State of California who received written communication(s) sent by or on behalf of Defendant PRA at any time from August 20, 2008, to the present, in which a demand for payment and/or an offer of "settlement" is made for alleged civil penalties citing California Penal Code § 490.5, in which the letter demands in excess of $500 (the "UCL Class ")[.]

(Dkt. No. 120-1 at 13.) While Chang may have reviewed the letter received by her father, the letter makes no demand for payment from and/or an offer of settlement to Chang. The letter is directed solely to the parent/guardian of Chang for a claim against the parent/guardian because of the incident involving Chang.

Further, even if she had shown a significant protectable interest, she has not shown that her interest will be impaired if intervention is denied. Chang concedes that she can file a separate UCL action that will not be time barred as to Chang. While Chang urges that this will be inefficient, she does not cite any authority holding that inefficiency constitutes impairment of a proposed intervenor's interest. And indeed, to hold as much would require courts to find impairment every time a motion to intervene is filed. This is not what the rules nor case law

holds.

In her reply, Chang raises a new argument for impairment. Citing *American Pipe & Construction Co. v. Utah*, 414 U.S. at 538, 552 (1974), she contends for the first time that denying intervention may prejudice some members of the UCL class because their claims may be barred by the relevant statute of limitations in any new action, whereas the limitations period would be tolled if they are permitted to pursue their claims on a classwide basis in this action.[1] (*See* Dkt. No. 161 at 11.) Assuming that would be the result (Chang has not cited any cases so holding), the Court is unaware of any case holding that even though a proposed intervenor's interest is not impaired, potential impairment to absent putative class members satisfies the "impairment of protectable interest" requirement for purposes of mandatory intervention. The lone case cited by Chang, *Koike v. Starbucks Corp.*, 602 F.Supp.2d 1158, 1160-63 (N.D. Cal. 2009), is distinguishable as it involved intervention for the purposes of pursuing an appeal. And, in any event, it is a non-binding district court case that has never been followed for this proposition. For this reason, too, mandatory intervention does not apply.

Chang has also failed to demonstrate that her motion to intervene is timely, as discussed in more detail below. *See infra* Section II.A.3. Chang is therefore not entitled to mandatory intervention.

## II. The Court Declines to Permit Permissive Intervention

### A. *Threshold Requirements*

As discussed above, to establish eligibility for permissive intervention the movant must establish jurisdiction, commonality, and timeliness. *See Donnelly*, 149 F.3d at 412.

#### 1. Jurisdiction

Although not challenged by Defendants, the Court must decide whether it has jurisdiction of Chang's state law UCL claim independent of Plaintiff's complaint. *See United Inv'rs Life Ins. Co. v. Waddell & Reed, Inc.*, 360 F.3d 960, 966-67 (9th Cir. 2004). To establish such jurisdiction,

---

[1] In *American Pipe*, the Supreme Court noted that the "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554 (footnote omitted).

1   Chang merely conclusorily alleges that jurisdiction lies under the Class Action Fairness Act
2   ("CAFA"), 28 U.S.C. § 1332(d)(2), because the amount-in-controversy exceeds $5 million.  (Dkt.
3   No. 135-3 at ¶ 5; Dkt. No. 161 at 14.)  The record does not support this bald assertion of the
4   amount in controversy.  While Defendant Palmer's database administrator testified that as of May
5   14, 2015 Palmer had sent 189,269 letters demanding more than $500 and referencing Panel Code
6   § 490.5 (Dkt. No. 120-2 at 151-52), the record is silent as to how many of the recipients actually
7   paid money to Palmer and thus would arguably be entitled to restitution.  Thus, before the Court
8   could allow Chang to intervene, the record would have to be supplemented with allegations
9   showing that CAFA jurisdiction exists for her state-law UCL claim.

10              2.      Commonality

11          Commonality requires the moving party to show that it has a claim or defense that shares
12  with the main action a common question of law or fact.  *See Prete*, 438 F.3d at 954.  Chang
13  contends that her claims "arise from a common nucleus of operative fact as those alleged in the
14  present matter" inasmuch as she "received the same debt collection letter citing Penal Code
15  § 490.5 and demanding in excess of $500."  (Dkt. No. 135-1 at 11.)  Chang, however, did not
16  receive the same debt collection letter as Plaintiff.  Palmer did not send Chang any debt collection
17  letter; instead, Palmer sent Chang's parents a letter based on a claim against Chang's parents.
18  Further, the language of the debt collection letter Chang's father received is different from the
19  language of the letter Plaintiff received: whereas Plaintiff argued that his letter was unfair within
20  the meaning of the UCL because it cited only Penal Code Section 490.5 and sought more money
21  than that statutory section permits, the letter involving Chang cites two separate sources of law
22  creating a potential obligation to Chang's former employer: Section 490.5 *and* "common law."
23  (*Compare* Dkt. No. 120-3 ("Pursuant to Cal. Penal Code § 490.5, . . . Pep Boys may consider
24  moving forward with a statutory civil damages claim against you."); *and id.* at 7 (same), *with* Dkt.
25  No. 135-4 ("Pursuant to *common law* and Cal. Penal Code § 490.5, . . . Urban Outfitters may
26  consider moving forward on a civil damages claim against you.").)  Thus, Plaintiff's UCL class
27  claim and Chang's UCL claim are slightly different due to the varying language of the letters.
28  Nevertheless, construing the commonality requirement broadly as required, *see Prete*, 438 F.3d at

United States District Court
Northern District of California

954, the Court concludes that the citations to Section 490.5 when seeking in excess of $500—even in the presence of a citation to other law—is a common question, especially since the letter states that the recipient will receive a release of "the statutory civil 'penalty' claim" and not also of any common law claims. (Dkt. No. 135-4 at 4.)

3. Timeliness

To determine whether intervention is timely, courts consider three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Cohorst v. BRE Props., Inc.*, 10CV2666 JM BGS, 2011 WL 3475274, at *4 (S.D. Cal. Aug. 5, 2011) (quoting *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 2007); *Cnty. of Orange v. Air Cal.*, 799 F.2d 535, 537 (9th Cir. 1986)). "Timeliness is a flexible concept; its determination is left to the district court's discretion." *Alisal Water*, 370 F.3d at 921 (citation omitted).

a. Stage of the Proceeding

The age of this case weighs against a finding of timeliness, as this case was originally filed nearly three and a half years ago. *See Peruta v. Cnty. of San Diego*, 771 F.3d 570, 572 (9th Cir. 2014) (concluding that the stage of the proceedings discouraged a finding of timeliness where the movants "sought intervention more than four years after th[e] case began"). "[A]lthough the length of the delay is not determinative, any substantial lapse of time weighs heavily against intervention." *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996) (citation omitted); *see also Alisal Water*, 370 F.3d at 921 (noting that "the mere lapse of time, without more, is not necessarily a bar to intervention," and "a party's interest in a specific phase of a proceeding may support intervention at that particular stage of the lawsuit") (citation omitted). Along with the significant lapse of time, the circumstances presented here—in particular, the work done to date—support the conclusion that this case has reached too advanced a stage to permit a finding of timeliness.

To date in this action, Plaintiff has amended the class action complaint twice. The parties have litigated a motion to dismiss, a motion for judgment on the pleadings, a number of discovery disputes, and a motion for class certification. They have engaged in extensive discovery including

1  three separate deposition sessions of Plaintiff, and they have participated in multiple mediations in
2  an attempt to resolve this action. The Court has set deadlines for dispositive motions and trial on
3  Plaintiff's FDCPA claims. The Court withheld setting a schedule on the UCL claim in light of the
4  instant motion to intervene—that is, given that resolution of this motion will determine whether
5  the UCL claim can proceed at all and, if so, whether it may do so as a class action. While Chang
6  emphasizes that this action has not yet proceeded to the merits—*i.e.*, motions for summary
7  judgment—"in class actions, . . . certification . . . is the significant litigation event[,]" *Lewis v.*
8  *First Am. Title Ins. Co.*, No. 1:06-cv-478-EJL-LMB, 2010 WL 3735485, at *3 (D. Id. Aug. 5,
9  2010) (citations omitted), and by the time Chang filed the instant motion to intervene, Plaintiff had
10 already filed his motion for class certification and Defendants' opposition was due the next day.
11 In short, the amount of time and work done to date renders Chang's motion to intervene untimely.
12 *See Wilson*, 131 F.3d at 1303 (noting that movants' "focus on what had *not* yet occurred prior to
13 [their motion] . . . ignores what *had* already occurred by that time"); *cf. Winston v. United States*,
14 No. 14-cv-05417-MEJ, 2015 WL 9474284, at *3 (N.D. Cal. Dec. 29, 2015) ("As discovery has yet
15 to commence and no significant substantive rulings have been made, the case remains in the early
16 stages of litigation. Thus, the proceedings have not advanced to the point where intervention is
17 appropriate.") (citations omitted).
18      Chang relies chiefly on *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 393 (1977), for
19 the proposition that it is never too late to intervene in a class action, and intervention is even
20 appropriate after entry of judgment. But in *United Airlines* and its progeny, courts granted
21 intervention for the sole and limited purpose of appealing the district court's order denying
22 certification and striking class allegations. *See id.*; *see also Jou v. Kimberly-Clark Corp.*, No. 13-
23 cv-03075-JSC, 2015 WL 4537533, at *4 (N.D. Cal. July 27, 2015) (explaining that that *United*
24 *Airlines* did not apply because the intervention did not follow a Rule 41(a) dismissal). The Ninth
25 Circuit has explicitly stated that the timeliness inquiry for intervention does not apply to
26 intervention for the limited purpose of appeal from a denial of class certification. *Alaska v.*
27 *Suburban Propane Gas Corp.*, 123 F.3d 1317, 1320 (9th Cir. 1997). As Chang does not seek to
28 intervene for such a limited purpose, her cited cases do not apply.

Chang's reliance on *Kamakahi v. American Society for Reproductive Medicine*, No. 11-cv-0178-JCS, 2015 WL 1926312 (N.D. Cal. Apr. 27, 2015), is equally unavailing. There the plaintiffs challenged the "ethical guidelines" that restrict donor compensation and thus, according to the plaintiffs, restrain trade in violation of the Sherman Act. The district court certified the Sherman Act question, but denied certification of the claim for injunctive relief on the grounds that the named plaintiffs did not intend to donate eggs again. The proposed intervenors satisfied that standing issue, and sought to intervene solely to pursue the injunctive relief remedy. The court granted them permissive intervention.

Even though the intervenors filed their motion after class certification proceedings, the court found that the proposed intervention "does not meaningfully implicate any stage of [the] case before the recent class certification." *Id.* at *4. Not so here. Given the different language in the letter sent to Chang's parents, and given that the letter was directed at Chang's parents and not Chang, and that Chang's father and not Chang paid Palmer, Chang's intervention implicates nearly every earlier stage of this proceeding, including the motions to dismiss and for judgment on the pleadings, all of which may need to be brought anew. Whereas in *Kamakahi* the timing of the motion to intervene weighed only "slightly against a finding of timeliness, but not strongly[,]" *id.* at *4, in light of all that has happened in this case, and what would have to be revisited, the timing of Chang's motion weighs heavily against intervention. Further, at the time intervention was granted in *Kamakahi*, the district court had otherwise stayed all proceedings pending the defendants' appeal of the court's grant of class certification. Here, in contrast, the case is moving forward.

In light of the motion practice in this case leading up to the instant motion to intervene, Chang's motion comes at very late stage of the proceedings, strongly supporting a finding of untimeliness.

        b.      Prejudice to Other Parties

"In the context of a timeliness analysis, prejudice is evaluated based on the difference between timely and untimely intervention—not based on the work" the defendants would need to do regardless of when intervention was sought. *Kamakahi*, 2015 WL 1926312 at *4 (footnote and

10

citation omitted); *see also Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007) ("[T]hat the [applicant] is filing its Motion now, rather than earlier in the proceedings, does not cause prejudice . . . since the practical result of its intervention . . . would have occurred whenever the state joined the proceedings."). That is, prejudice is harm arising from late intervention as opposed to early intervention. *See, e.g.*, *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002) (affirming district court's finding of prejudice where parties had already reached a settlement agreement because late intervention would "complicate the issues and upset the delicate balance achieved" by the parties' agreement) (citations omitted).

Chang contends that there is no prejudice to Defendants because her substitution as class representative "will not inject new issue[s] and matters into the litigation that exceed the scope of the operative Complaint[,]" her claims have already been part of the case since the beginning, and Chang will make herself available for deposition to prevent delay on a renewed motion for certification. (Dkt. No. 135-1 at 9.) Not so. While the UCL claim has been part of this action since the outset, as discussed in the context of the stage of the proceedings, there are issues particular to Chang's claim that likely would have to be litigated if the Court permits her intervention. These issues include her standing given that Palmer did not direct a settlement letter to her, did not make a claim against her, and did not receive any money from her, as well as whether she states a claim in light of the different language in the letter sent to her father. *See Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 320-21 (2011) (noting that to adequately allege injury and therefore establish standing for a UCL claim, a plaintiff must show that they personally lost money or property as a result of the unfair competition) (citing Cal. Bus. & Prof. Code § 17204). While Chang's claim is, at a high level, the "same" as Plaintiff's UCL claim in the operative complaint, her pleading raises new issues beyond the scope of the claims and defenses raised by Plaintiff, which constitutes prejudice. *Cf. Munoz v. PHH Corp.*, No. 1:08-cv-0759-AWI-BAM, 2013 WL 3935054, at *9 (N.D. Cal. July 29, 2013) (finding no prejudice where the intervenor's claims were identical to those in the operative complaint "presence in this action does not expand the scope of this litigation") (citation omitted); *Home Builders Ass'n of N. Cal. v. U.S. Fish & Wildlife Serv.*, No. 05-cv-629, 2006 WL 1455430, at *3 (E.D. Cal. May 24, 2006) (finding motion

11

to intervene timely where "it does not appear that [the intervenor's motion or pleading] has raised 'new issues or matters' that are well beyond the scope of claims and defenses raised by the existing parties").

What is more, these issues would have to be resolved before the parties address Chang's typicality and adequacy as class representative in the context of a renewed motion for class certification, and class certification was supposed to be completed by the end of 2015. Given the repeated impasses that the parties reached during the course of discovery to date, it seems likely that this additional discovery would not be smooth-sailing either, as Plaintiff's counsel seeks to represent Chang as substituted class representative here. Thus, an ultimate decision on class certification with Chang as representative would be delayed. In comparison, had Chang moved to intervene earlier, the motion practice and discovery taken to date would already have included all of these issues. This is prejudice. *See, e.g.*, *Harris v. Vector Mktg. Corp.*, No. C-08-5198-EMC, 2010 WL 3743532, at *5-6 (N.D. Cal. Sept. 17, 2010) (finding prejudice where permitting intervention would cause the parties to engage in additional discovery and other work that would necessarily delay class certification). In contrast, denying intervention will not prejudice Chang, who admits that she will still be able to file an independent action asserting her own UCL claim. She can even bring it as a class action, although the class may look a bit different from the putative class in this action.

This factor therefore weighs against timeliness.

c.  Reason for and Length of Delay

The third factor, the reasons for and length of the delay, also suggests that the motion to intervene is untimely. A party "seeking to intervene must act as soon as he 'knows or has reason to know that his interests might be adversely affected by the outcome of the litigation.'" *Peruta*, 771 F.3d at 572 (quoting *United States v. Oregon*, 913 F.2d 576, 589 (9th Cir. 1990)). "Delay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties, not the date it learned of the litigation." *Washington*, 86 F.3d at 1503 (citation omitted); *accord Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). Even a lengthy delay, however, "is not as damaging as a failure to adequately explain

the reason for the delay." *Smith ex rel. Thompson v. L.A. Unified Sch. Dist.*, NO. CV 93-7044 RSWL (GHKx), 2014 WL 176677, at *7 (C.D. Cal. Jan. 16, 2014) (citing *Wilson*, 131 F.3d at 1304, and *Marsh*, 194 F.3d at 1052).

Chang argues that her delay in moving to intervene was reasonable inasmuch as she filed the motion "very shortly after Defendants raised the adequacy issues relating to Plaintiff in their . . . Motion for Sanctions." (Dkt. No. 135-1 at 9.) Defendants filed the sanctions motion on October 29, 2015. (Dkt. No. 133.) While Plaintiff's inadequacy was not the *subject* of the motion, in the motion Defendants did contend that Plaintiff's counsel obstructed Plaintiff's deposition to hide his inadequacy. (*See* Dkt. No. 133.) Measured from that date, Chang's motion to intervene one week later involves minimal delay and a rational explanation. The focus on the motion for sanctions, however, is misplaced: Chang's counsel (who is also Plaintiff's counsel) expressed awareness that Defendants would challenge Plaintiff's adequacy in June 2015 following the second session of Plaintiff's deposition. (*See* Dkt. No. 157-4 at 6 (Plaintiff's counsel refers in an email to defense counsel's "attack on adequacy"); *see also id.* at 15 (in a draft discovery letter dated July 8, 2015, Defendants argue that Plaintiff's counsel ended the June 2015 deposition early when Plaintiff's inadequacy arose).) Plaintiff also noted in his motion for class certification filed in September of 2015 his understanding that Defendants would challenge Plaintiff's adequacy. (Dkt. No. 120-1 at 16.) Because counsel's knowledge is imputed to the client in the same action, *see McDaniel v. GEICO Gen. Ins. Co.*, 55 F. Supp. 3d 1244, 1260 (E.D. Cal. 2014) ("An attorney's knowledge, whether actually told to a client or not, is imputed to the client.") (citing *Herman v. L.A. Cnty. Metro. Transp. Auth.*, 71 Cal. App. 4th 819, 838 (1999)), Chang therefore knew of questions to Plaintiff's adequacy as early as June 2015, nearly three months before Plaintiff filed his motion for class certification, but Chang did not move to intervene until Defendants' opposition to class certification was nearly due.

Chang again relies on *Kamakahi*, and argues that there the court rejected the defendant's argument that "plaintiffs' counsel knew that the existing plaintiffs were inadequate long before the intervenors sought intervention" and instead agreed that it was appropriate for counsel to "await the District Court's decision on adequacy before seeking intervention." (Dkt. No. 161 at 9.)

13

*Kamakahi* does not help Chang. The portion of *Kamakahi* on which Chang relies was the court's description of the intervenor's argument, not its own view. And the *Kamakahi* court did not conclude as much. Instead, the court found "sound" "[t]he rationale that attorneys who fail to select appropriate class representatives should not be given unwarranted do-overs[.]" 2015 WL 1926312, at *6. The court did note that this doctrine had its downsides because it creates an incentive for intervenors to obtain separate counsel when shared counsel might be more efficient. *Id.* In the end, the court found the intervenor's motion timely "[e]ven if this factor weighs against intervention[.]" *Id.* In other words, it implied that taking a second bite of the class representative apple after a finding of inadequacy is not a sufficient explanation for delaying a motion to intervene, but nevertheless permitted intervention in that case because there was no prejudice. Not so here, for the reasons described above. While Chang moved to intervene before class certification was actually decided, she waited until shortly before Defendants' opposition to class certification was due as a back-up plan in case their first, years-long litigation strategy of Plaintiff as class representative failed. And Plaintiffs' counsel knew from the beginning that their client never paid any money to Defendants "in settlement" and thus might not be an adequate representative of those who did pay money. Thus, this factor too weighs in favor of a finding of untimeliness.

Ultimately, the timeliness inquiry requires the Court to consider all of the circumstances. *See NAACP v. New York*, 413 U.S. 345, 366 (1973). Here, on balance, given the amount of litigation that has already occurred to date and the prejudice to Defendants in granting intervention, the Court concludes that Chang's motion is not sufficiently timely to warrant intervention.

B. *The Court Declines to Exercise its Discretion to Allow Intervention*

"Even if an applicant satisfies [the] threshold requirements, the district court has discretion to deny permissive intervention." *Donnelly*, 159 F.3d at 412 (citation omitted). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "[T]he court may also consider other factors in the exercise of discretion, including the nature and extent of the

intervenors' interest and whether the intervenors' interests are adequately represented by other parties." *Perry v. Prop. 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (internal quotation marks and citation omitted).

Here, even if Chang had satisfied the three threshold requirements for permissive intervention (which she has not), the Court would nevertheless deny intervention because allowing Chang to intervene to serve as class representative for the UCL class will significantly delay the adjudication of the original parties' case. *See* Fed. R. Civ. P. 24(b)(3). As discussed above, because Palmer did not send Chang a settlement letter, and instead sought to settle a claim against Chang's parents, and because Chang did not pay any monies to Palmer, there are serious questions as to whether she has standing to bring a claim or can state a UCL claim. The different language in the letter sent to her father also raises issues about whether she states a claim. Regardless of the final outcome, allowing Chang to intervene will mean resolution of this already very old case will be delayed while these legal questions are litigated.

In short, permitting Chang to intervene as class representative is not as simple as a mere substitution that revives Plaintiff's UCL class claim. Allowing her claims to proceed would require further discovery and motion practice focusing on her unique claims prior to a renewed motion for class certification. Put another way, permitting her intervention "would divert time and resources from the principal thrust of [Plaintiff's] lawsuit and entangle the legal and factual issues involved therein within a web that is not of the original parties' making." *UMG Recordings, Inc. v. Bertselsmann AG*, 222 F.R.D. 408, 415 (N.D. Cal. 2004); *see also Hanni v. Am. Airlines, Inc.*, No. 08-cv-00732-CW, 2010 WL 289297, at *7 (N.D. Cal. Jan. 15, 2010) (concluding that judicial economy would suffer with the addition of a proposed intervenor's new claims and issues because intervention would require additional discovery, push back deadlines, and delay the resolution of the existing case). Under these circumstances, the Court declines to exercise its discretion to permit her to intervene.

\* \* \*

Chang is not entitled to mandatory intervention and the Court declines to grant permissive intervention. In her reply, Chang attaches a declaration from her father, Stephen Chang, the

recipient of Palmer's letter, who avers that he is "ready, willing, and able to serve as class representative . . . [t]o the extent that the Court believes that [he] should participate in this lawsuit[.]" (Dkt. No. 161-1.) The Court declines to construe Chang's motion as brought on behalf of her father. To the extent that this is a request to file a subsequent motion to intervene to substitute Stephen Chang as UCL class representative, it is too little too late: the motion would be all the more untimely, and would likely fail on similar grounds as Chang's motion due to the different language of the letter.

## CONCLUSION

For the reasons described above, the Court DENIES the motion to intervene. The parties shall jointly submit a proposed schedule for resolution of Plaintiff's UCL claim by February 5, 2016.

This Order disposes of Docket No. 135.

**IT IS SO ORDERED.**

Dated: January 27, 2016

JACQUELINE SCOTT CORLEY
United States Magistrate Judge